Daniel Moquin, (UT No. 7585)
Navajo Nation Department of Justice
PO Box 2010
Window Rock AZ 86515
(928) 871-6210
dmoquin@nndoj.org
*Counsel for Applicant Navajo Nation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GARFIELD COUNTY, UTAH, a Utah political subdivision; and<br><br>KANE COUNTY, UTAH, a Utah political subdivision;<br><br>THE STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its Attorney General, SEAN D. REYE,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR. in his official Capacity as President of the United States; DEB HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; TOM VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE; RANDY MOORE, in his official capacity as Chief of the Forest Service; FOREST SERVICE,<br>   *Defendants.* | **PROPOSED INTERVENORS' SECOND AMENDED RULE 24 MOTION TO INTERVENE**<br><br>Civil Action No. 4:22-cv-00059-DN<br><br>Judge David Nuffer |

1

Pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a) and (b), the Hopi Tribe ("Hopi"), Navajo Nation, Ute Mountain Ute Tribe ("Ute Mountain Ute"), and Pueblo of Zuni ("Zuni") (together, "the Tribes"), all federally recognized tribes, respectfully move this Court to intervene. The Tribes meet all the criteria to intervene as a matter of right, under Rule 24(a)(2) or, in the alternative, for permissive intervention under Rule 24(b)(1). The Tribes seek intervention in support of the defendants, President Joseph R. Biden, Jr., et al. ("United States") with respect to Plaintiffs' claims regarding Bears Ears National Monument. Pursuant to FRCP 24(c) a proposed answer is attached as Exhibit A.

Undersigned counsel for the Tribes contacted counsel for the other parties with regard to this motion. The United States, State of Utah, Garfield County, and Kane County all stated that they take no position on the Tribes' motion to intervene.

## I. FACTUAL BACKGROUND

For thousands of years, the tribal nations living in the southwest, including intervening Tribes, have cherished the Bears Ears National Monument ("Bears Ears") region and held it as a sacred place. *See generally* 2021 Bears Ears National Monument, 86 FR 57321 (Oct. 15, 2021). To this day, the Tribes use the region for many purposes: collecting plants, minerals, and waters for religious and medicinal purposes; hunting, fishing, and gathering; conducting ceremonies; and making offerings at archaeological sites. *Id*. at 57323; *see also* 2016 Establishment of the Bears Ears National Monument, 82 FR 1139-40 (Dec. 28, 2016). Indeed, some ceremonies use items that can *only* be harvested from Bears Ears. Bears Ears has long been and remains a home to the Tribes. *Id*.

Because of this importance, in 2015, the Bears Ears Inter-Tribal Coalition ("Bears Ears Coalition") was formed, which includes the Tribes here. The Bears Ears Coalition advocated for

the Bears Ears region and the thousands of objects of unique historical, cultural, spiritual, and scientific importance therein to become a National Monument. 86 FR 57321. President Barack Obama recognized the importance of these objects, and on December 28, 2016, he established the Bears Ears National Monument. 82 FR. 1139. President Obama's Proclamation vested the Tribes with management responsibilities, calling for one representative from each Tribe to serve on the Bears Ears Commission ("Commission"), which was to provide expert guidance and recommendations in development of a land management plan for Bears Ears. *Id*. at 1144. The Commission was formed and began holding meetings in 2017 to initiate the land management plan process.

On December 4, 2017, President Trump purported to revoke President Obama's Bears Ears Proclamation. The Tribes brought a lawsuit under the Constitution and the Antiquities Act to challenge the revocation. *Hopi Tribe, et al. v. Trump*, Civil Action No. 17-2590 (TSC) (D.D.C.). The State of Utah intervened as a defendant. That action remains pending in the United States District Court for the District of Columbia.

On October 8, 2021, President Biden issued his own Bears Ears Proclamation ("Biden Proclamation"). The Tribes immediately got to work through the Commission—which the Biden Proclamation re-established, 86 FR 57332—in order to develop a land management plan in concert with federal agencies and officials. This time, however, the Tribes have been vested with an even greater role, as they entered into an unprecedented cooperative agreement with the federal government to manage the lands.[1]

---

[1] Inter-Governmental Cooperative Agreement Between The Tribal Nations…and The United Stated Department of The Interior, Bureau of Land Management And The United States Department Of Agriculture, Forest Service For The Cooperative Management of The Federal Lands And Resources of The Bears Ears National Monument (2022) 3

3

The State of Utah and two of its counties have now filed this suit seeking to overturn the Biden Proclamation. The Tribes ask that this Court grant them intervention in this matter as they have significant interests in the Biden Proclamation and Bears Ears. Because the Tribes will necessarily be impacted by the outcome of this litigation and are not adequately represented by the existing parties, and because no party objects to the Tribes' intervention, the Tribes are entitled to intervention here.

## II.   ARGUMENT

### A.   The Tribes Are Entitled to Intervene as a Matter of Right.

Intervention as of right is governed by FRCP 24(a), which provides, in relevant part:

On timely motion, the court must permit anyone to intervene who:

. . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Under Rule 24(a)(2), an applicant must establish that: (1) its motion is timely; (2) it has an interest relating to the property or transaction at issue in the litigation; (3) without intervention, an adverse ruling may "as a practical matter" impair or impede that interest; and (4) its interest is not adequately represented by the existing parties. *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (quoting *Coal. of Ariz./N.M. Cntys. v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996)). If an applicant meets each of these four requirements, then they "must" be allowed to intervene. Fed. R. Civ. P. or FRCP 24(a). The Tenth Circuit "has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *Kane Cnty.,*

---

https://www.blm.gov/sites/blm.gov/files/docs/2022-06/BearsEarsNationalMonumentInter-GovernmentalAgreement2022.pdf.

*Utah v. United States*, 928 F.3d 877, 890 (10th Cir. 2019); *Utah Ass'n of Cntys.*, 255 F.3d at 1249. In addition, "the requirements for intervention may be relaxed in cases raising significant public interests." *Id*. As demonstrated below, the Tribes satisfy all four of the factors required for intervention as of right under Rule 24(a)(2).

### 1. The Tribes' Motion for Intervention is Timely.

The Tribes' Motion is timely. Timeliness is determined based on the totality of the circumstances. *Kane Cnty., Utah* 928 F.3d at 890-91. The Tribes have filed their motion just a few months after the case was initially filed. Granting intervention would not prejudice the existing parties as there has been no answer filed, no discovery, and no scheduling conference. Nothing else about the timing of the Tribes' intervention will cause prejudice to the existing parties, and there are no unusual circumstances that would overcome the historically liberal approach of granting intervention.

### 2. The Tribes Have Significant Protectable Interests in the Present Litigation.

Applicants are granted intervention when they "have an interest that could be adversely affected by the litigation." *Kane Cnty., Utah*, 928 F.3d at 891. The interest element has been described as "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). It is "indisputable" that an applicant's "environmental concern is a legally protectable interest." *WildEarth Guardians* 604 F.3d at 1198 The Tribes seeking to intervene here have multiple compelling and protectable interests in defending the Biden Proclamation that include and stretch beyond environmental concerns.

The importance of the Bears Ears region to the Tribes and their members cannot be overstated. The opening sentences of the Obama Proclamation describe the historical connections

the Tribes have to the region and its unparalleled geographical, environmental, and cultural uniqueness. 82 FR 1139. The Biden Proclamation confirmed the Tribes' historical connections. 86 FR 57321. Bears Ears is the Tribes' ancient homeland, and it continues to be a homeland in significant cultural, spiritual, and livelihood respects.

The Tribes also have a "persistent record of advocacy" for Bears Ears under federal law, including securing its status as a National Monument. *Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth* at 841 (noting a record of advocacy amounts to a direct and substantial interest). Indeed, the Biden Proclamation acknowledges the Tribes' advocacy efforts, noting that it was not until the Tribes "requested permanent protection from President Obama that Bears Ears National Monument became a reality." 86 FR 57321.

The Presidential proclamations at the heart of this case also establish the Tribes' direct stake as sovereigns via the establishment of the Commission. Both the Obama and Biden Proclamations recognized the Tribes' expert knowledge of the objects of importance in Bears Ears. 86 FR 57322; 82 FR 1139. The Obama Proclamation established a Commission through which the Tribes, as sovereign nations with a government-to-government relationship with the United States, were vested with authority to provide guidance and recommendations on management of their sacred lands and patrimony within the Monument. *Id*. at 1144. The Biden Proclamation restored the scope of the Commission to provide guidance and recommendations "of the entire monument." 86 FR 57332. However, the Biden Administration went a step further in June of this year by entering into a historic cooperative agreement with the Tribes.  Press Release, U.S. Department of the Interior, BLM, Forest Service and Five Tribes of the Bears Ears Commission Commit to Historic Co-management of Bears Ears National Monument (June 20, 2022), https://www.doi.gov/pressreleases/blm-forest-service-and-five-tribes-bears-ears-commission-

commit-historic-co-management. The agreement to co-manage the Monument "enhanced Tribal engagement in management decisions" by fleshing out the scope of the Commissions' and agencies' cooperation and their respective commitments in much greater detail and substance than provided by the Biden Proclamation itself. Inter-Governmental Cooperative Agreement Between The Tribal Nations and…The United Stated Department of The Interior, Bureau Of Land Management And The United States Department of Agriculture, Forest Service For The Cooperative Management of The Federal Lands And Resources of The Bears Ears National Monument (2022) 3, https://www.blm.gov/sites/blm.gov/files/docs/2022-06/BearsEarsNationalMonumentInter-GovernmentalAgreement2022.pdf .

As can be seen, the Tribes have several unique protectable interests in Bears Ears grounded in their historical relationship with the region, their history of advocacy to secure protections for it, and their prerogatives in managing the monument through the Commission.

### 3. The Tribes' Interests May, as a Practical Matter, Be Impaired by This Proceeding.

Establishing the potential impairment of an interest "presents a minimal burden," and such an impairment may be "contingent upon the outcome of [ ] litigation," *Kane Cnty., Utah*, 928 F.3d at 891 (citations omitted). That standard is easily satisfied here, where the Plaintiffs seek to have the Monument declared invalid. This puts the Monument and the Commission—and all of its efforts thus far—in jeopardy. The result of a successful challenge would strip monument protection from many important historical and scientific objects as identified in the Biden Proclamation. It would likewise jeopardize the Tribes' government-to-government co-management role in stewarding the monument lands. There can be no question that the Tribes' interests may be impaired by the outcome of this litigation.

### 4. The Existing Parties Do Not Adequately Represent the Tribes' Interests.

The burden to establish inadequate representation is "minimal" and "[t]he possibility of divergence of interest need not be great in order to satisfy" it. *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017) (internal citation and quotation marks omitted). Even where the federal government is representing the public interest, as here, another public entity may still intervene. *Id.* After all, "[i]n litigating on behalf of the general public, the [federal] government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Id*. (quoting *Utah Ass'n of Cntys,* 255 F.3d at 1255-56). The Tribes' sovereign status only heightens this distinction; even if the Tribes and the federal government share similar goals in this litigation, the United States cannot adequately represent the Tribes' interests.

There is also a very real risk of a policy shift by the administration in this matter. *See Kane Cnty., Utah*, 928 F.3d at 892; *Utah Ass'n of Cntys,* 255 F.3d at 1255. This shift in policy has already been borne out with regard to Bears Ears, beginning when the Trump Administration purported to revoke the Obama Proclamation, and shifting again when the Biden Administration declared a new monument restoring protections to lands the federal government treated as excluded from the Monument during the Trump Administration. In *Western Energy Alliance*, the Tenth Circuit recognized a change in Administration as raising "the possibility of divergence of interest or a shift during litigation." 877 F.3d at 1169. (internal citations and quotation marks omitted).

The Tribes' pending lawsuit against the United States challenging the Trump Proclamation further shows that the Tribes' interests are *not* always squarely aligned with the federal government's views on the Monument and the Antiquities Act. In the other lawsuit, the federal government continues to defend the Trump proclamation as valid. Because of this, the arguments

made and the remedies sought in this lawsuit may differ between the Tribes and the federal government. Accordingly, all four prongs of the test for intervention as of right are amply satisfied, and the Tribes are entitled to intervene here.

### B. Alternatively, the Tribes Meet the Requirements for Permissive Intervention.

In the event this Court finds that the Tribes have not established the requirements for intervention as of right, the Tribes respectfully request that this Court allow permissive intervention. "Upon timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*.

The Tribes seek to intervene in this case for the purpose of addressing the legal and factual issues raised by the Plaintiff regarding Bears Ears National Monument, as well as addressing any potential remedy as a result of the Court's conclusion. Thus, Rule 24(b)'s common question requirement is met. The second half of the permissive intervention test looks to timeliness and prejudice to the parties. As stated previously, the Tribes' motion is timely and unopposed, no prejudice will result from granting intervention, and the Tribes bring a perspective to the litigation distinct from that of the other parties on the common questions of law and fact

### CONCLUSION

For the reasons stated above, the Tribes respectfully request that their *Motion for Intervention* be granted.

RESPECTFULLY SUBMITTED this 22nd day of November 2022.

*/s/ Daniel Moquin*
Daniel Moquin, (UT No. 7585)
Paul Spruhan (*pro hac vice* forthcoming)
 *Assistant Attorney General*

Sage G. Metoxen (*pro hac vice* forthcoming)
Louis Mallette (*pro hac vice* forthcoming)
Navajo Nation Department of Justice
PO Box 2010
Window Rock AZ 86515
Phone: (928) 871-6210
dmoquin@nndoj.org
paspruhan@nndoj.org
smetoxen@nndoj.org

*Counsel for Applicant Navajo Nation*

Matthew L. Campbell (*pro hac vice* forthcoming)
Jason Searle (*pro hac vice* forthcoming)
Allison Neswood (*pro hac vice* forthcoming)
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Phone: (303) 447-8760
Fax: (303) 443-7776
mcampbell@narf.org
searle@narf.org
neswood@narf.org

*Counsel for Applicants Hopi Tribe, Ute Mountain Ute Tribe, and Pueblo of Zuni*

David Mielke (*pro hac vice* forthcoming)
SONOSKY, CHAMBERS, SACHSE, MIELKE & BROWNELL, LLP
500 Marquette Avenue, NW, Suite 660
Albuquerque, NM 87102
Phone: (505) 247-0147
Email: dmielke@abqsonosky.com

Whitney A. Leonard (*pro hac vice* forthcoming)
SONOSKY, CHAMBERS, SACHSE, MILLER & MONKMAN, LLP
510 L Street, Suite 310
Anchorage, AK  99501
Phone: (907) 258-6377
Email : whitney@sonosky.net

*Counsel for Applicant Pueblo of Zuni*