Archaeological Intervenors' Motion to Intervene
Case No. 4:22-cv-0059-DN

# EXHIBIT 8

WAYNE G. PETTY (Utah Bar No. 2596)
WAYNE G. PETTY LAW, PLLC
8 East Broadway, Suite 540
Salt Lake City, Utah 84111
(801) 521-0250
wayne@pettylegal.com

*Attorneys for Proposed Intervenor-Defendants American Anthropological Association, Archaeological Institute of America, and Society for American Archaeology*

Lori Potter (Pro Hac Vice Pending)
Nathaniel H. Hunt (Pro Hac Vice Pending)
Sarah C. Judkins (Pro Hac Vice Pending)
Timothy A. Roth (Pro Hac Vice Pending)
KAPLAN KIRSCH & ROCKWELL, LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7008
lpotter@kaplankirsch.com
nhunt@kaplankirsch.com
sjudkins@kaplankirsch.com
troth@kaplankirsch.com

*Attorneys for Proposed Intervenor-Defendants American Anthropological Association, Archaeological Institute of America, and Society for American Archaeology*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
SOUTHERN REGION OF THE CENTRAL DIVISION**

| | |
|---|---|
| GARFIELD COUNTY, UTAH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, JR. in his official capacity as President of the United States, et al.,<br><br>Defendants.<br>and<br><br>AMERICAN ANTHROPOLOGICAL ASSOCIATION, ARCHAEOLOGICAL INSTITUTE OF AMERICA, and SOCIETY FOR AMERICAN ARCHAEOLOGY<br><br>Proposed Intervenor-Defendants | Case No. 4:22-cv-00059-DN<br><br>**DECLARATION OF ROBIN WILLSCHEIDT**<br><br>Honorable David Nuffer |

**DECLARATION OF ROBIN WILLSCHEIDT**

I, Robin Willscheidt, being competent to make this statement, do swear and affirm the following:

1. My primary residence has been in Grand County, Utah (just outside of Moab city limits), since I was born there in 1997.

2. I was raised by my mother and stepfather, a fifth generation Utahn who taught me traditional rural Utah lifeways, an appreciation and deep respect for the landscape, and the hardscrabble economics of multi-generational southwestern families. I was also raised by my community, a town of five thousand people that includes indigenous educators, public lands management professionals, archaeologists, and service industry workers.

3. Growing up in Southeastern Utah, I took field trips and family vacations to the Bears Ears National Monument and Grand Staircase-Escalante National Monument, Arches and Canyonlands National Parks, the Manti-La Sal National Forest, and dozens of other natural and cultural heritage areas in Southeastern Utah. I spent most of my childhood outside, exploring the desert and learning about the unique archaeological landscape and indigenous peoples of the Southwest. In addition, I regularly visited, hiked, and rode motorcycles throughout Bears Ears National Monument and the surrounding lands, including the Valley of the Gods, Butler Wash, Cedar Mesa, and the Moki Dugway.

4. I graduated from Stanford University in 2019 with a Bachelor of Arts in Political Science and a minor in Archeology. My collegiate coursework consisted mostly of archaeology classes, research, and excavations. Inside of the classroom, my research was primarily focused on the Bears Ears National Monument; I completed numerous papers and projects related to the Bears

2

Ears National Monument's unique archaeological and natural resources as well as its political history. Outside of the classroom, I conducted archaeological research and gained field experience at several archaeologically significant sites, including: a maritime excavation of a Byzantine shipwreck, known as the "church wreck," at the Marzamemi Maritime Heritage Project in Sicily, Italy; Muwekma Ohlone excavations on Stanford's campus and throughout the broader San Francisco Bay Area; and Cherokee language preservation projects in Cherokee, North Carolina.

5. As an undergraduate student at Stanford, I also hosted and supported discussions regarding the Bears Ears National Monument in the Stanford political science, archaeology, and Native American student communities, including, for example, Stanford in Government and the Stanford Pre-Law Society.

6. I am a second-year law student at the University of Southern California Gould School of Law. My coursework at Gould is focused primarily on federal Indian law, tribal law, art law, and cultural property law. When I become a licensed lawyer, I plan to dedicate my pro bono practice and eventually my full-time practice to cultural property work, museum governance, and supporting tribal communities, especially those in Southeastern Utah.

7. I am also an ally member and Vice President of Events and Finance for the Gould Native American Law Students Association as well as the President of the Gould Art Law Society. Both student groups have advocated for a Federal Indian Law and Art Law course, respectively, both of which are being taught at Gould this year. These courses will include discussions regarding environmental and cultural property issues that implicate sites such as the Bears Ears National Monument. Additionally, both student groups have hosted and plan to host several student- and practitioner-led events open to the public; these events will cover environmental and cultural

3

property topics, including a discussion about the Bears Ears National Monument, the Antiquities Act, and indigenous guidance in public lands management.

8. In addition, I am a member of the Archeological Institute of America (AIA). As a student member of the AIA, I attend talks and events hosted by leading archaeologists on a variety of archaeological and cultural heritage topics. I look forward to leading events of my own regarding cultural property law and American southwestern archeology in the future.

9. I have also taken part in several volunteer operations that relate to the Bears Ears National Monument and archaeology in Southeastern Utah. For instance, I have volunteered to assist a group of local archaeologists in their site stewardship programs, which operate in and around the Bears Ears National Monument. Although the program has been placed on hold due to the COVID-19 pandemic, I plan to participate in these site stewardship volunteer efforts once these programs resume. Furthermore, I have contributed to community advocacy efforts on a volunteer basis as a trustee for the Moab Museum—one of the few rural museums in Southeastern Utah dedicated to local natural and cultural history—and visitor education as a horseback trail guide for Moab Horses.

10. In 2020, I applied to represent the public at large on the Bears Ears National Monument Advisory Committee, which was established by presidential proclamation, and is under the auspices of the U.S. Department of Interior's Bureau of Land Management. Although I was not selected for the position, I remain dedicated to supporting the Bears Ears National Monument to ensure that visitors have access to cultural and natural conservation information and to offer context to visitors for the innumerable unique sites in Southeastern Utah, including the Bears Ears National Monument.

11. In addition to the academic and volunteer work that I have undertaken related the Bears Ears National Monument, I also visit the Bears Ears National Monument and its immediate surroundings at least 2-3 times per year for recreational purposes. During my visits, I typically hike to archaeological sites in Butler Wash and Cedar Mesa.[1] The quality and preservation of these sites is astonishing—it is unlike anything I have ever seen. In Butler Wash, for example, artifacts, including potsherds, are visible in and on the surface layer. Pictograph pigment is astonishingly bright and undamaged by graffiti. Rock houses are complete or nearly so, and rooms are visible. Visitors can hike directly to these sites and stand beside the ruins, or clearly see those at higher elevation with binoculars. Sites I have visited in the area are all unique, and nowhere else have I seen sites so well preserved and accessible to the public.

12. I plan to visit the Bears Ears National Monument on a regular basis in the future. For instance, I have plans to visit the monument in the months of December 2022 (Winter Break) and March 2023 (Spring Break). During those trips, I plan to hike to several archeological sites within the Bears Ears National Monument to view rock art panels, including the "Citadel" and "Cave Towers" ruins.

---

[1] On December 28, 2016, former President Barack Obama established the Bears Ears National Monument, consisting of 1.35 million acres of land in Southeastern Utah, including both Butler Wash and Cedar Mesa, through Proclamation 9558 ("Obama Proclamation"). Less than a year later, on December 4, 2017, former President Donald Trump modified the boundaries of the Bears Ears National Monument reducing its size by approximately 85% through Proclamation 9681 ("Trump Proclamation"). While Butler Wash remained within the boundaries of the scaled-back Bears Ears National Monument, specifically, within the Shash Jáa unit, Cedar Mesa, which is a 400-square mile plateau located at the heart of the Bears Ears landscape, was not. Nevertheless, Cedar Mesa regained monument status on October 8, 2021, when President Biden issued a proclamation restoring the Bears Ears National Monument to the boundaries established under the Obama Proclamation and retaining protections for an additional 11,200 acres added by the Trump Proclamation—the Bears Ears National Monument now totals 1.36 million acres.

13. Lastly, I plan to donate my time in the future to supporting amateur archeological survey and excavation projects in and around the Bears Ears National Monument as a volunteer archaeologist. I also plan to support cultural heritage preservation efforts through pro bono legal work. My volunteer community advocacy work as a trustee for the Moab Museum will also continue to focus on community education regarding Southeast Utah history and archaeology, which necessarily includes information about the Bears Ears National Monument.

14. If Plaintiffs prevail, my interests in the Bears Ears National Monument will be impaired as a result of near-certain damage and destruction to archaeologically significant landscapes, sites, and artifacts. As an avocational archaeologist and archaeological enthusiast, I visit Bears Ears National Monument to experience its unique, one-of-a-kind rock art sites, including most sites on Cedar Mesa, which hosts incomparable rock houses, kivas, and towers. Absent monument protection, however, these irreplaceable sites and artifacts will likely be damaged or destroyed as a result of looting, vandalism, and irresponsible recreation, thereby diminishing my visiting experience. National monument designations also improve road and trail quality, development and maintenance, and ensure that activities designated for certain areas take place in those areas. Thus, as an avocational archaeologist and archaeological enthusiast, my experience visiting Bears Ears National Monument will be diminished if my ability to access areas of archaeological intrigue is made more difficult due to unmaintained roads and trails or due to site disruption as a result of certain activities, which are incompatible with the protection of archaeologically significant objects, occurring in those areas.

15. The Bears Ears National Monument is a crucial piece of the archaeological and cultural landscape of the Southwest, specifically Southeastern Utah. My undergraduate education

emphasized the importance of the "archaeological landscape," which refers to the bounded area of land in which human behavior and its relationship with the natural environment over space and time can be viewed and understood through the study of the interconnected networks of sites, artifacts, and natural features that exist therein. Findings at discrete sites are meaningless if not viewed in the context of the broader archaeological landscape. Therefore, the preservation of archaeological landscapes, sites, and artifacts at the Bears Ears National Monument is crucial to professional and avocational archaeologists' understanding of the history and culture of Southeastern Utah.

16. Visitor education about the proper treatment of landscapes, sites, and artifacts, and supervision by lands management officials, is key. In addition, well-maintained maps and roadways help alleviate damage to sites, artifacts, and the natural landscape by facilitating responsible site access. The visible difference between site quality and maintenance on public lands and those not maintained by federal agencies is astonishing: theft, destruction, and graffiti is obvious to the public and even more clear to a trained archeologist. I have witnessed many locals and visitors take home arrowheads, potsherds, and other artifacts on independent lands or those they believe are not well supervised. This type of damage is certain to occur within the Bears Ears National Monument in the absence of monument status and related protections. As such, my ability to experience the full quality of Southeastern Utah's archaeological landscape will be impaired if the Plaintiffs prevail, causing either all or some of the Bears Ears National Monument—and the indispensable, archaeological landscapes, sites, and artifacts that exist therein—to lose certain protections that would otherwise be afforded to it by monument status.

17. My volunteer work would also change if the Bears Ears National Monument was invalidated or if the boundaries that were established by the Trump Proclamation were restored. Specifically, site stewards and local amateur archaeologists would face significant obstacles to accessing sites, obtaining permissions to collect data, and accessing records—management of these volunteer-led projects would become far more difficult. Moreover, community organizations such as the Moab Museum would be required to spend their limited resources dedicating time to basic visitor education otherwise provided by Bears Ears National Monument staff, rather than focusing on meaningful site and artifact interpretation and exhibitions.

18. The U.S. government cannot adequately represent the interests of the archeological community in this litigation. Since Bears Ears National Monument was established just six short years ago, the U.S. government's position on whether significant portions of the monument are worthy of protection under the Antiquities Act has changed several times. Specifically, in December 2016, former President Obama established Bears Ears National Monument, consisting of approximately 1.35 million acres of land in southern Utah. Within a year, former President Trump reduced the monument size by about 85%. And just four years later, President Biden reinstated the monument to its original boundaries and even expanded it in size by about 11,200 acres. In two more short years, the U.S. government's policy towards Bears Ears National Monument might change once more under a new presidential administration. As such, the U.S. government cannot be expected to commit to a consistent policy on Bears Ears National Monument, particularly one which guarantees the adequate consideration and representation of archaeological interests, due to the competing and impassioned political interests that exist on this issue.

19. In addition, it is not within the U.S. government's mandate to consider the interests of the archaeological community at the level at which the community deems adequate. That is because the U.S. government is required to balance several competing interests (i.e., recreation, mineral development, and others) in protecting the general "public interest." This necessarily limits the U.S. government's zeal in its representation of archaeological interests. And it could result in the U.S. government emphasizing the interests of other groups, for instance, visiting recreationalists, and paying short shrift to the interests of local Southeast Utahns as well as professional and avocational archaeologists and archaeological enthusiasts.

20. Finally, the U.S. government's representation of archaeological interests tends to be misinformed, and consequently, inadequate by the standards of the archaeological community. There is a delicate line to walk between providing too much and too little access to sites that the U.S. government does not adequately tread. For example, many of the sites in the Bears Ears National Monument may be too accessible to the public; because ladders and stairs are provided for access and many areas are not properly roped off, it is easy to intentionally or inadvertently damage ruins and artifacts. Conversely, in efforts to protect resources, federal officials often share too little information with dedicated local volunteers. Without facilitated or supervised admission to sites and access to records from federal archeological and environmental professionals, site stewards must often repeat work or work without context. Given the foregoing, the nuanced interests of the archaeological community, including my own interests as an avocational archaeologist and archaeological enthusiast, are not adequately represented by the U.S. government.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of November, 2022, at Los Angeles, California.

<u>/s/ Robin Willscheidt</u>
(*Signed by Wayne Petty with permission of Robin Willscheidt*)
<u>/s/ Wayne Petty</u>