# EXHIBIT F

Brady Brammer (SBN: 13411)
Matt Piccolo (SBN: 15707)
BRAMMER RANCK, LLP
1955 W. Grove Parkway, Suite 200
Pleasant Grove, UT 84062
Telephone: (801) 893-3951
bbrammer@spauldinglaw.com
mpiccolo@spauldinglaw.com

James M. Burnham (*pro hac vice*)
Harry S. Graver (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
jburnham@jonesday.com
hgraver@jonesday.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GARFIELD COUNTY, UTAH, a Utah political subdivision; KANE COUNTY, UTAH, a Utah political subdivision; and THE STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its Attorney General, SEAN D. REYES,<br>       *Plaintiffs*, | |
| ZEBEDIAH GEORGE DALTON; BLUERIBBON COALITION; KYLE KIMMERLE; and SUZETTE RANEA MORRIS,<br>       *Consolidated Plaintiffs*,<br>       v. | **SUPPLEMENTAL DECLARATION OF SHANE SHUMWAY IN SUPPORT OF PLAINTIFFS' AMENDED COMPLAINT** |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; DEBRA A. HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE; RANDY MOORE, in his official capacity as Chief of the United States Forest Service; and UNITED STATES FOREST SERVICE,<br>       *Defendants*, | Lead Case No. 4:22cv00059 DN-PK<br>Member Case No. 4:22cv00060 DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |
| HOPI TRIBE; NAVAJO NATION; PUEBLO OF ZUNI; and UTE MOUNTAIN UTE TRIBE,<br>       *Intervenor Defendants*. | |

I, Shane Shumway, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge.

2. I declare under penalty of perjury under the laws of the United States that the information in both this declaration and my prior declaration (attached hereto) is true and correct.

3. The injuries described in my prior declaration have continued to endure, and will only compound so long as President Biden's monument designations are allowed to stand.

Dated: 1-3-23

*Shane Shumway* (signature)

Shane Shumway

3

Brady Brammer (SBN: 13411)
Matt Piccolo (SBN: 15707)
SPAULDING LAW, LLP
1955 W. Grove Parkway, Suite 250
Pleasant Grove, UT 84062
Telephone: (801) 893-3951
Facsimile: (801) 877-4318
bbrammer@spauldinglaw.com
mpiccolo@spauldinglaw.com

James M. Burnham (*pro hac vice* forthcoming)
Harry S. Graver (*pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
jburnham@jonesday.com
hgraver@jonesday.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ZEBEDIAH GEORGE DALTON; BLUERIBBON COALITION; KYLE KIMMERLE; and SUZETTE RANEA MORRIS,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; DEBRA A. HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE; RANDY MOORE, in his official capacity as Chief of the United States Forest Service; and UNITED STATES FOREST SERVICE,<br><br>*Defendants*. | Civil Action No. 4:22-cv-00060-DN<br><br>**DECLARATION OF SHANE SHUMWAY** |

I, Shane Shumway, declare as follows:

1. My name is Shane Shumway. I am presently a member in good standing of the BlueRibbon Coalition. This declaration is based on my own knowledge. I am over 18 years old.

2. I am currently a resident of Blanding, Utah, where I was born and raised. I also raised my own family in Blanding. Three of my five children are raising families of their own here too. My other two children are nearby, and live in rural communities across Southern Utah.

3. My family has lived on these lands since they were first settled. My ancestors were the first settlers of Blanding, as well as Bluff, Utah. Our family has a long history of farming, ranching, and mining in this part of the country. They built much of the infrastructure that has allowed Blanding to become what it is now. I care deeply about the preservation of these lands.

4. My ancestors settled this land. They came to live in harsh desolation and used their blood, sweat, and tears—and for some, their lives—to build roads, reservoirs, and water systems so that a community could be settled here. The lands around Bears Ears are sacred to our family. These lands are where I have had deeply spiritual moments that have connected me to my ancestors. I have learned about my family history through this land. But because of the Monument, and because of a host of restrictions and regulations, I also find myself separated from that history. It is sad to me that I cannot do what my ancestors were able to do here—live off the land and freely explore its bounds. And I am also saddened by the fact that future generations—including my children and their children—may be robbed of those same experiences.

5. My livelihood, and the livelihood of my family, are wrapped up in these lands. I have been a rancher and farmer my whole life. I run a construction business here with my younger brother. And my family has long been involved in mining. Through these businesses, we own land within the current limits of the Bears Ears National Monument.

6. President Biden's proclamation expanding Bears Ears has already harmed our family and our business. And those harms will only grow if the Monument is allowed to stand.

7. In particular, the Monument has directly harmed our family's mining business. My family has six mining claims within the Bears Ears National Monument boundaries. We have good reason to think that these claims are sitting on uranium, given that a French company previously owned the mining rights and we have documentation from them drilling and finding good-quality uranium. Because we are waiting on the price of uranium to rise, however, we have not yet drilled on the lands where we have claims. We have instead been maintaining the claims since 2007 at a total cost of about $165 per year per claim.

8. The price of uranium is almost at the level where it would be profitable to mine. But the Monument designation creates significant barriers to us doing so. For instance, under the interim guidance, we would need to subject our claims to costly and risky validity exams—exams that we would have to pay for—before we could pursue mining. As bad, the current regulatory environment also makes it impossible for us to sell our claims to other mining companies. Companies like Energy Fuels—who we would previously have been able to send our claims to given the price of uranium—are no longer interested because of the Monument and its restrictions. As a result, we are essentially put to the choice of holding on to our mining claims (and paying fees to maintain those claims every year) or abandoning them because they are useless. We have not mined on any of our claims and, because of the Monument, we do not plan on in the near future. Absent the Monument's current designation, we would be moving forward with our mining claims.

9. The Bears Ears Monument restrictions on mining are also having a destructive impact on our communities. The designation prohibits any new mining claims within the

Monument. But our community has many families—like ours—who are mining families. Indeed, my father was a uranium miner, and my father-in-law was too. They both mined dozens of mines in this region. In fact, my father-in-law operated "The Markey," which was the longest continuously producing mine in San Juan County. Accordingly, the Bears Ears Monument directly prevents us from practicing our family's culture and heritage. And the same is true for scores of other families in this region who are no longer able to follow their family traditions in mining.

10. The Monument is hurting our broader economy. For instance, Energy Fuels' White Mesa Mill is one of the largest private employers in San Juan County, providing close to sixty good-paying jobs. For now, those jobs include one for my son, who is the mill manager, and my son-in-law, who is in charge of environmental regulations. But the future of Energy Fuels is now uncertain given the regulatory and related consequences that have followed from the Monument.

11. Perhaps worst of all, these costs are entirely unnecessary. Our communities care deeply about the rich cultural history of these lands, and work hard together to preserve that history. As a lifelong resident of this area, I have seen too, that existing laws—such as the Archeological Resource Protection Act—provide significant protections for the artifacts in this area. In my view, the monument designation will offer few benefits, and bring with it remarkable, far-reaching costs.

Dated: 7-25-22

_____
Shane Shumway