IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GARFIELD COUNTY, UTAH, a Utah political subdivision; KANE COUNTY, UTAH, a Utah political subdivision; and THE STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its Attorney General, SEAN D. REYES;<br><br>Plaintiffs,<br><br>ZEBEDIAH GEORGE DALTON; BLUERIBBON COALITION; KYLE KIMMERLE; and SUZETTE RANEA MORRIS;<br><br>Consolidated Plas.,<br>vs.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; DEBRA A. HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE; RANDY MOORE, in his official capacity as Chief of the United States Forest Service; and UNITED STATES FOREST SERVICE;<br>Defendants,<br><br>HOPI TRIBE, NAVAJO NATION, PUEBLO OF ZUNI, and UTE MOUNTAIN UTE TRIBE;<br>Intervenor-Dfts. | MEMORANDUM DECISION AND ORDER ON PROPOSED INTERVENORS' MOTIONS TO INTERVENE<br><br>Lead Case No. 4:22-cv-00059-DN-PK<br>Member Case No. 4:22-cv-00060-DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

1

Before the Court are eight motions to intervene filed by 22 intervenors.[1] For the reasons discussed, the Court GRANTS the motions to intervene filed by Intervenors National Parks Conservation Association, Wilderness Society, Grand Canyon Trust, Great Old Broads for Wilderness, Western Watersheds Project, WildEarth Guardians, Sierra Club, Center for Biological Diversity, Southern Utah Wilderness Alliance, and National Resources Defense Counsel ("SUWA Intervenors")[2] and DENIES the other six motions to intervene.[3]

## I. BACKGROUND

These consolidated cases arose after President Joseph Biden reestablished and broadened the national monument boundaries at Bears Ears National Monument and Grand Staircase-Escalante National Monument in Utah. Both Plaintiffs and Consolidated Plaintiffs seek declaratory and injunctive relief against the Defendants.[4] Plaintiffs allege President Biden's proclamations that entire landscapes at Bears Ears and Grand Staircase are national monuments exceed his authority under the Antiquities Act,[5] and cause harm to various agencies, landowners, government entities, and the economy in general.[6] Consolidated Plaintiffs also assert that President Biden's proclamations were not authorized under the Antiquities Act,[7] but they allege different harms to personal interests such as influxes of tourism, increased restrictions on recreational and off-road activities, limitations on land development, damages to communities and economies, and

---

[1] Docket Nos. 27, 31, 33, 34, 40, 42, 43, 44 (all docket numbers are from the lead case unless otherwise indicated).

[2] Docket Nos. 27, 40.

[3] Docket Nos. 31, 33, 34, 42, 43, 44.

[4] Docket No. 91, at 1; Docket No. 90, at 66.

[5] Docket No. 91, at 1–2.

[6] *Id*. at 3–5.

[7] Docket No. 90, at 61–62.

inabilities to use land for occupational purposes (i.e., hunting, farming, ranching, mining, etc.).[8] Since both cases have common questions of law (the Antiquities Act) and fact (Bears Ears and Grand Staircase), the District Court consolidated the cases on November 30, 2022.[9]

A.   INTERVENTION MOTIONS

In November 2022, four Native American Tribes moved to intervene as Defendants in both the lead and the member case.[10] These motions were unopposed, and the Court granted intervention on December 8, 2022.[11] For purposes of resolving the remaining motions to intervene, the Tribes assert cultural, religious, and other interests in the Bears Ears National Monument.[12]

Between November 22, 2022, and November 23, 2022, four different groups of non-profit organizations moved to intervene as Defendants in both the lead case and the member case.[13] Twenty-two different organizations argued that they are entitled to mandatory intervention, or alternatively, permissive intervention. They assert various scientific, recreational, archeological, and paleontological interests in the lands currently protected as Bears Ears National Monument and Grand Staircase-Escalante National Monument.

   *1.   SUWA Intervenors' Interests*

The SUWA Intervenors assert interests in *both* Bears Ears National Monument and Grand Staircase-Escalante National Monument.[14] SUWA Intervenors are "nonprofit organizations

---

[8] *Id*., at 24, 26–28, 30, 33–34, 36, 41–42, 45–47, 49, 53–54, 56, 58–59.

[9] Docket No. 39.

[10] Docket Nos. 29, 41.

[11] Docket No. 52.

[12] Docket No. 29, at 2, 5–6; Docket No. 41, at 2, 5.

[13] Docket Nos. 27, 31, 33, 34, 40, 42, 43, 44.

[14] Docket No. 27, at 4; Docket No. 40, at 4.

dedicated to the conservation of federal public lands and the wildlife and ecosystems they sustain."[15] SUWA Intervenors and their members claim to have a long history of advocating for the monuments' designations and in defending the monuments' boundaries through litigation and participation in public comments.[16] Additionally, their members regularly visit the monuments to appreciate the "cultural, ecological, and scientific resources they hold."[17]

    2.    *Grand Staircase Intervenors' Interests*

Intervenors Grand Staircase Escalante Partners, Society of Vertebrate Paleontology, and Conservation Lands Foundation ("Grand Staircase Intervenors") assert an interest only in the Grand Staircase-Escalante National Monument.[18] Grand Staircase Intervenors allege that the founding purposes of their organizations are to "protect sensitive resources of the type contained within Grand Staircase . . . and to protect the existence of the Monument itself."[19] More specifically, these organizations work with the Bureau of Land Management to provide educational and supportive programming, develop a science and monitoring plan, support the restoration of damaged sites, and conduct paleontological field work within Grand Staircase.[20] Essentially, Grand Staircase Intervenors make blanket arguments that they can assist the Court because of their extensive experience with the legal and factual questions at issue in this case.[21]

---

[15] Docket No. 27, at 5; Docket No. 40, at 5.

[16] Docket No. 27, at 4–5; Docket No. 40, at 4–5.

[17] Docket No. 27, at 6; Docket No. 40, at 6.

[18] Docket No. 31, at 1; Docket No. 42, at 1.

[19] Docket No. 31, at 2; Docket No. 42, at 2.

[20] Docket No. 31, at 5–6; Docket No. 42, at 5–6.

[21] Docket No. 31, at 3, 11; Docket No. 42, at 3, 11–12.

*3.      Friends of Cedar Mesa Intervenors' Interests*

Intervenors Society of Vertebrate Paleontology, Conservation Lands Foundation, Utah Dine Bikeyah, Friends of Cedar Mesa, Archaeology Southwest, Patagonia Works, The Access Fund, and the National Trust for Historic Preservation in the United States ("Friends of Cedar Mesa Intervenors") assert an interest only in the Bears Ears National Monument.[22] These non-profit organizations have been involved in monument-boundary litigation and conservation efforts.[23] Additionally, their members use the Bears Ears land recreationally, religiously, culturally, and scientifically.[24]

*4.      American Anthropological Association Intervenors' Interests*

Intervenors American Anthropological Association, Archaeological Institute of America, and Society for American Archaeology ("American Anthropological Association Intervenors") assert interests in *both* monuments.[25] As indicated in their names, these organizations are largely interested in conducting archeological and paleontological research in Grand Staircase and Bears Ears.[26] They have also been involved in enacting the Antiquities Act and in litigating the monument boundaries.[27]

---

[22] Docket No. 33, at 1; Docket No. 43, at 1.

[23] Docket No. 33, at 5–6, 10; Docket No. 43, at 5–6, 10.

[24] Docket No. 33, at 4–6, 8; Docket No. 43, at 4–6, 8.

[25] Docket No. 34, at 1; Docket No. 44, at 1.

[26] Docket No. 34, at 1–2; Docket No. 44, at 1–2.

[27] Docket No. 34, at 4–5, 11; Docket No. 44, at 4–5, 11.

## II.  DISCUSSION

A.  STANDING

To seek relief in federal court, a party must normally show constitutional standing.[28] Parties seeking to intervene under Rule 24, however, only need to establish independent Article III standing if they seek relief beyond that sought by an existing party.[29] Otherwise, intervenors can "piggyback" off another party's constitutional standing.[30] The Tenth Circuit has applied these rules to both plaintiff-side and defendant-side intervenors.[31]

Here, there is no evidence that the proposed intervenor-defendants are seeking relief beyond that sought by the existing defendants—dismissal of the complaints and maintenance of the current national monument boundaries. Since the requested relief is the same, the proposed intervenors have "piggyback standing," and the Court need not inquire into the traditional requirements for Article III standing. Even if the proposed intervenors were required to demonstrate standing, the extensive declarations that have been submitted are sufficient to show standing.

B.  MANDATORY INTERVENTION

Under Fed. R. Civ. P. 24(a)(2), a district court "must" permit any party to intervene if the four elements of mandatory intervention are met: (1) the motion is timely, (2) the proposed

---

[28] *Kane Cnty. v. United States*, 928 F.3d 877, 886 (10th Cir. 2019) (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). A party must demonstrate he has suffered an injury in fact that is concrete and particularized and either actual or imminent. *Id*. at 888. The injury must be fairly traceable to the challenged conduct, and the injury needs to likely be redressable by a favorable decision. *Id*.

[29] *Id*. at 886 (citing *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1648 (2017).

[30] *Id*. (citing *San Juan Cnty. v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007); *see also City of Herriman v. Bell*, 590 F.3d 1176, 1183–84 (10th Cir. 2010) (citing *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1079 (10th Cir. 2009)).

[31] *Kane Cnty.*, 928 F.3d at 887, n.12.

intervenor "claims an interest relating to the property or transaction that is the subject of the action," (3) the proposed intervenor's interest would be impaired or impeded if they were not allowed to intervene, and (4) existing parties do not adequately represent that interest.[32] Historically, the Tenth Circuit has viewed the requirements for mandatory intervention liberally.[33]

   *1.   Timeliness*

The timeliness of a motion to intervene is assessed in light of all circumstances including the following factors: (1) length of time since the applicant knew of his interest in the case, (2) prejudice to the existing parties, (3) prejudice to the applicant, and (4) the existence of any unusual circumstances.[34]

Here, it is not disputed that the intervention motions are timely.[35] The complaint in the lead case was filed on August 24, 2022,[36] and the complaint in the member case was filed on August 25, 2022.[37] The lengthy motions to intervene were filed three months later before any answer or motion to dismiss was filed by the Defendants.[38] Since very little has happened substantively in this case, the proposed intervenors' motions are timely and will not unfairly delay or prejudice the existing parties.

---

[32] *Id*. at 890.

[33] *Id*. (citing *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017); *see also WildEarth Guardians v. U.S.F.S.*, 573 F.3d 992, 995 (10th Cir. 2009); *Coal. of Ariz./N.M. Cntys. v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (quoting *Nat'l Farm Lines v. Interstate Com. Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977)).

[34] *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).

[35] *See* Docket No. 55, at 6; Docket No. 56, at 6; Docket No. 57, at 2.

[36] Docket No. 2.

[37] Docket No. 2 in Member Case 4:22-cv-00060.

[38] Docket Nos. 27, 31, 33, 34, 40, 42, 43, 44.

2. *Interest in the Subject of Litigation*

The Tenth Circuit has determined that the interest asserted by a proposed intervenor must be direct, substantial, and legally protectable.[39] This requirement is fact-specific and used as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[40] So long as a proposed intervenor's interest is not too attenuated, they will normally pass this hurdle with little difficulty.

In similar cases, the Tenth Circuit has held that a prospective intervenor's environmental concern is a legally protectable interest.[41] The Tenth Circuit has also recognized a cognizable interest in the continued existence of a national monument and its restrictions on public entry.[42]

As discussed above, all four groups of intervenors assert interests in the continued existence of one or both of the national monuments as evidenced by the lengthy exhibits to each of their motions.[43] The non-profit organizations also assert a number of other recreational, religious, and cultural interests in the regions currently protected by President Biden's proclamations. Thus, the proposed intervenors have certainly met this minimal burden.

3. *Impairment of Interest*

A proposed intervenor has a minimal burden to show that his or her substantial legal interest could be impaired if intervention is denied.[44] Notably, the mere availability of alternative

---

[39] *Utah Ass'n of Cntys.*, 255 F.3d at 1251 (citing *Coal. Of Ariz./N.M. Cntys.*, 100 F.3d at 840).

[40] *Id.* at 1252.

[41] *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (citing *San Juan Cnty.*, 503 F.3d at 1199).

[42] *Id.* at 1198–99.

[43] *See* Docket Nos. 27-1, 27-2, 27-3, 27-4, 27-5, 27-6, 27-7, 27-8, 27-9, 27-10, 27-11, 31-1, 31-2, 31-3, 31-4, 33-1, 33-2, 33-3, 33-4, 34, 35.

[44] *Utah Ass'n of Cntys.*, 255 F.3d at 1253.

forums, i.e., amicus briefing, is not sufficient to justify denial of a motion to intervene if the proposed intervenor's interest will be prejudiced by their absence from the main action.[45]

The Tenth Circuit has previously held that the potential invalidation of a national monument and its maintenance plan demonstrates sufficient impairment of potential intervenors' abilities to protect their interest in the monument itself.[46] Invalidation of the Bears Ears and Grand Staircase-Escalante National Monuments is exactly what is at stake in the present action before this Court. Plaintiffs and Consolidated Plaintiffs are seeking injunctive relief against President Biden's proclamations; such relief endangers the current monument boundaries and the ability of government agencies to carry out their management plans for those regions. Thus, proposed intervenors have made a sufficient showing that their interests in the monument(s) will be impaired if they are not allowed to participate in the case.

   4.  *Adequacy of Representation by Existing Parties*

The fourth element for mandatory intervention is where the main issues in this case arise. First, the parties disagree about which individuals and entities constitute "existing parties." Defendants and Plaintiffs argue that the proposed intervenors can be "existing parties;" thus, the Court should consider whether any or all of them could adequately represent each other in order to limit the number of additional parties.[47] Proposed intervenors argue that neither the Tribes nor any of the other proposed intervenors constitute existing parties because none of them were parties to the case *at the time the motions to intervene were filed*.[48] But when a party intervenes as of right

---

[45] *Id*. at 1254.

[46] *Id*. at 1253 n.5.

[47] Docket No. 55, at 7–8; Docket No. 56, at 8–9; Docket No. 57, at 2–4.

[48] Docket No. 79, at 6–8; Docket No. 80, at 8–9; Docket No. 81, at 5; Docket No. 82, at 8.

pursuant to Rule 24(a), it becomes a full participant in the lawsuit and is treated just as if it were an original party.[49]

It is only logical to consider each motion to intervene individually and in the order which it was filed. If the Court grants a motion to intervene, it will then consider whether that intervenor-party can adequately represent the remaining proposed intervenors' interests. To find otherwise would encourage parties with identical interests to move for intervention at the same time so they can avoid the limitations on Rule 24 intervention. Since this Court has already granted the Tribes' motions to intervene,[50] the four Tribes are considered "existing parties" along with the already-existing defendants.

Second, the remaining proposed intervenors bear the burden—although minimal—of showing inadequate representation by the existing parties; they must only show that representation *may* be inadequate.[51] The Tenth Circuit has recognized a presumption of adequate representation when an applicant for intervention has the same ultimate objective in the litigation as an existing party.[52] This presumption of adequacy stands absent a showing of circumstances which make the existing party's representation inadequate.[53] These circumstances include a "showing that there is collusion between the representative and an opposing party, that the representative has an interest

---

[49] *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 889 n.2 (10th Cir. 2013) (citing *Alvarado v. J.C. Penney Co.*, 997 F.2d 803, 805 (10th Cir. 1993)).

[50] Docket No. 52.

[51] *Utah Ass'n of Cntys.*, 255 F.3d at 1254.

[52] *Pub. Serv. Co. of N.M. v. Barboan*, 857 F.3d 1101, 1113–14 (10th Cir. 2017); *see also Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1072–73 (10th Cir. 2015) (citations omitted); *Utah Ass'n of Cntys.*, 255 F.3d at 1255.

[53] *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996) (citing *Bottoms v. Dresser Indus. Inc.*, 797 F.2d 869, 872 (10th Cir. 1986)).

adverse to the applicant, or that the representative failed to represent the applicant's interest."[54] Representation is not inadequate simply because the intervenor and existing parties disagree regarding the facts or law of the case.

Here, the government, the Tribes, and the proposed intervenors share the same objective: dismissal of the complaints and maintenance of the existing monument boundaries. Thus, the presumption of adequate representation applies, and the proposed intervenors need to show collusion, adverse interest, or a failure to represent by the existing parties.[55]

As for the existing government defendants, the proposed intervenors have overcome the presumption of adequate representation. In *Utah Association of Counties v. Clinton*, the Tenth Circuit reversed the district court's denial of intervention because the government's representation of the public interest may not have adequately represented the private interests asserted by the proposed intervenors; such diversion of interests was enough to overcome the presumption of adequate representation.[56] While the *Utah Association of Counties* case is almost identical to the case before this Court, there is at least one major distinction; in that case, the government was the only possible "existing party" for purposes of the analysis. Here, however, the Tribes have already intervened as defendants.

While none of the proposed intervenors have sufficiently addressed whether the Tribes would adequately represent their interests, there are likely scenarios in which the Tribes may have "an interest adverse"[57] to the proposed intervenors, thus overcoming the presumption of adequate representation. Although the interest of the proposed intervenors and the Tribes "may appear

---

[54] *Tri-State Generation*, 787 F.3d at 1073 (quoting *Bottoms*, 797 F.2d at 872–73).
[55] *Id.*
[56] 255 F.3d at 1255–56.
[57] *Tri-State Generation*, 787 F.3d at 1073 (quoting *Bottoms*, 797 F.2d at 872–73).

similar, there is no way to say that there is no possibility that they will not be different and the possibility of divergence of interest need not be great in order to satisfy the burden of the applicants."[58] In light of the possibility that the proposed intervenors' interests will diverge from those of the Tribes, the proposed intervenors have overcome the presumption of adequate representation and met their minimal burden on this element. As a result, at least one of the groups of proposed intervenors must be allowed to intervene pursuant to Rule 24(a)'s mandatory language.

The Court finds it appropriate to rule on the motions to intervene in the order they were filed. Since the first group to file a motion to intervene was the group of SUWA intervenors, the Court grants their motion.[59] Having granted the SUWA intervenors' motion, the SUWA intervenors are treated as if they were original parties. The issue then becomes whether the remaining three groups of intervenors have overcome the presumption that the SUWA intervenors will adequately represent their interests.

The remaining three groups of proposed intervenors—Grand Staircase Intervenors, Friends of Cedar Mesa Intervenors, and American Anthropological Association Intervenors—have not presented any evidence that the SUWA intervenors have colluded with an opposing party, have an interest adverse to the three groups, or have failed to represent the interests of the three groups. In fact, all four groups of non-profit organizations have shown their ability to coordinate and file joint responses.[60] SUWA intervenors have interests in both Bears Ears and Grand Staircase-Escalante,

---

[58] *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978).

[59] Not only are the SUWA Intervenors the first to file their motion to intervene, but they are also the most representative of the intervenors.

[60] Docket Nos. 97, 107; *see also* Docket Nos. 79–82.

whereas two of the three remaining groups assert interests in only one of the monuments. The third group asserts narrow anthropological interests in both monuments. As discussed above, SUWA intervenors have a long history of advocacy for both monuments, much like the other three groups of non-profit organizations. Additionally, SUWA intervenors' interests are broad enough to encompass and represent the recreational, cultural, scientific, and conservation interests asserted by the other proposed intervenors. Their interests are similar, if not identical to, each other. It is hard to imagine a scenario where the SUWA intervenors' interests would be averse to the interests of the three remaining groups of non-profit organizations. Thus, the Court finds that the three remaining groups of intervenors have failed to overcome the presumption of adequate representation and deny their motions to intervene under Rule 24(a).

C.   PERMISSIVE INTERVENTION

Alternatively, the proposed intervenors seek permissive intervention. A district court has "very broad" discretion to grant permissive intervention under Fed. R. Civ. P. 24(b) if the intervenor "has a claim or defense that shares with the main action a common question of law or fact."[61] As part its consideration, the Court can analyze "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[62] The district court is also entitled to consider the potential for burdensome or duplicative discovery—even given the court's ability to manage discovery.[63]

Here, the intervenors' defenses all revolve around the same common questions of law and fact as the claims in the main action—whether President Biden's proclamations designating the

---

[61] Fed. R. Civ. P. 24(b)(1)(B); *see also City of Herriman*, 590 F.3d at 1184.

[62] Fed. R. Civ. P. 24(b)(3).

[63] *Tri-State Generation*, 787 F.3d at 1075.

Bears Ears and Grand Staircase-Escalante National Monuments violated the Antiquities Act. However, adding all 22 proposed, non-profit organizations as intervenor-defendants in this case is inefficient and will unduly delay the proceedings for the existing parties. As discussed above, the intervenors' interests are very similar, if not identical, to each other. It is within this Court's discretion to maintain order in this case and limit the number of duplicative and unnecessary parties. Thus, the Court denies granting the remaining six motions to intervene under Rule 24(b). Denial of intervention, however, does not prohibit the remaining proposed intervenors from seeking leave to file amicus briefs on the legal issues which they wish to argue.

### III. CONCLUSION

For the reasons discussed, the Court GRANTS only the SUWA Intervenors' motions to intervene, Docket Nos. 27 and 40, and DENIES the remaining six motions to intervene, Docket Nos. 31, 33, 34, 42, 43, 44.

SO ORDERED this 17th day of March, 2023.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge