**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
SOUTHERN REGION OF THE CENTRAL DIVISION**

| | |
|---|---|
| GARFIELD COUNTY, UTAH, a Utah political subdivision; KANE COUNTY, UTAH, a Utah political subdivision; THE STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its Attorney General, SEAN D. REYES;<br><br>*Plaintiffs*,<br><br>ZEBEDIAH GEORGE DALTON; BLUERIBBON COALITION; KYLE KIMMERLE; and SUZETTE RANEA MORRIS;<br><br>*Consolidated Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR. in his official capacity as President of the United States; DEB HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; TOM VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE; RANDY MOORE, in his official capacity as Chief of the Forest Service; FOREST SERVICE,<br><br>*Defendants*,<br><br>HOPI TRIBE; NAVAJO NATION; PUEBLO OF ZUNI; and UTE MOUNTAIN UTE TRIBE;<br><br>*Intervenor-Defendants*. | **PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE KOHLER'S ORDER GRANTING PROPOSED SUWA INTERVENORS' MOTION TO INTERVENE**<br><br>Lead Case No. 4:22cv00059 DN-PK<br><br>Member Case No. 4:22cv00060 DN<br><br>Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

"One of the arts of litigation is keeping matters as simple as possible. We have been instructed from childhood that too many cooks spoil the broth."[1] Duplicative intervenors use their party status to multiply briefing, complicate discovery, and impose unnecessary hardships on the parties and the Court. So it is with the SUWA movants, who have a demonstrated track record of "dominat[ing] the proceedings by [their] motion practice" and filing as many as "four times as many motions as any other party before the court."[2] Those risks might be justified if no existing party could adequately defend the challenged actions. But the existing defendants—and already permitted intervenor-defendants—can. The SUWA movants' recent and fully adoptive motion to dismiss confirms: they will add no value to the existing parties' endeavors.

Yet Magistrate Judge Kohler granted intervention to the SUWA movants without limitation.[3] *Garfield County* Plaintiffs respectfully object to that order on three grounds. First, the order erroneously relieved the SUWA movants of their burden to prove that the Tribal Intervenors' representation was "inadequate." Second, the order erroneously concluded—without analysis—that the Federal Defendants' representation was "inadequate." And third, if the SUWA movants are granted intervention, the order should have imposed limits on their participation.[4]

---

[1] *San Juan Cty. v. United States*, 503 F.3d 1163, 1206 (10th Cir. 2007) (plurality op.) (denying SUWA's intervention), *abrogated on other grounds as recognized in W. Energy All. v. Zinke*, 877 F.3d 1157 (10th Cir. 2017).

[2] *Kane Cty. v. United States*, 606 F. Supp. 3d 1138, 1162 (D. Utah 2022) (describing conduct of three of the SUWA movants).

[3] Doc. 122 ("Intervention Order").

[4] While the Individual Plaintiffs did not initially oppose intervention, they now join this objection. When contacted by the SUWA intervenors (and other would-be intervenors) in November, the Individual Plaintiffs stated that they "take no position on the motion to intervene, provided that participation of intervenors does not delay resolution of this case." Since then, the Court has granted intervention to the Tribal Intervenors (without opposition) and the parties have filed multiple dispositive motions. As the currently pending dispute over whether Individual Plaintiffs may even seek summary judgment indicates, procedural wrangling already threatens to complicate this litigation and thereby "delay resolution of this case." As a result, the Individual Plaintiffs now respectfully oppose the allowance of additional intervenors and thus join the *Garfield County* Plaintiffs in appealing Magistrate Judge Kohler's recent order allowing new intervenors to join this proceeding.

# BACKGROUND

The Antiquities Act of 1906 authorizes the president to reserve land only when necessary to protect "historic landmarks," "historic and prehistoric structures," or "other objects of historic or scientific interest."[5] Presidents have recently been admonished for attempting to transform that restricted statutory authorization "into a power without any discernible limit to set aside vast and amorphous expanses of terrain."[6] Undeterred, in 2021 President Biden invoked the Act to reserve as national monuments 3.23 million acres of land in southern Utah.[7] He claimed that his multi-million-acre reservations were authorized because they protected things like "landscape[s]," "potato[es]," "views," and "minnow[s]."[8]

The land that President Biden reserved and the features he included were already heavily protected by numerous federal laws. President Biden purported to prohibit theft and desecration of items on the land—acts that were already illegal under laws passed in the century since the Antiquities Act.[9] President Biden instead made it illegal for caretakers of the land, including Plaintiffs, to enter the land to manage it for multiple use and to care for its natural wildlife.[10] The reservations have attracted droves of tourists who have desecrated, trashed, and littered areas and items once pristine.[11] Vandalism on the land has increased.[12] And the reservations drew tourists into dangerously remote areas without providing for rangers, cell service, or maps, then hampered search-and-rescue efforts to save them.[13]

---

[5] 54 U.S.C. §320301(a).

[6] *Mass. Lobstermen's Ass'n v. Raimondo*, 141 S. Ct. 979, 981 (2021) (statement of Roberts, C.J.).

[7] Doc. 91 (Am. Compl.) at 1.

[8] *Bears Ears Nat'l Monument*, 86 Fed. Reg. 57321 (Oct. 15, 2021); *Grand Staircase-Escalante Nat'l Monument*, 86 Fed. Reg. 57335 (Oct. 15, 2021).

[9] Doc. 91 at 11-20.

[10] *Id.* at 30-61.

[11] *Id.* at 22, 31-34, 39, 46.

[12] *Id.* at 22, 32-34, 58.

[13] *Id.* at 35-38.

Impeded from using and caring for the homeland they loved, Plaintiffs sued. They challenged the reservations and implementing management plans as beyond the Antiquities Act's scope.[14] The Individual Plaintiffs brought similar claims and the cases were consolidated.[15] President Biden's Department of Justice entered an appearance to defend the reservations. Four Tribes were allowed intervention (with no objection from Plaintiffs).[16] Then, *twenty-two* additional parties moved to intervene as defendants.[17]

Magistrate Judge Kohler granted intervention to the SUWA movants, who are 10 of those 22 parties.[18] The order reasoned that the SUWA movants satisfied all elements for intervention-as-of-right under Rule 24, including that their interests were not "adequately represent[ed]" by "existing parties."[19] The order did not address whether the SUWA movants should be subject to any limitations on their rights as parties. Meanwhile, six months after the case was filed, Federal Defendants and the Tribal Intervenors submitted over 200 pages of motion-to-dismiss briefs and supporting declarations.[20] The parties and Court have been bogged down in wearying coordination over things as simple as briefing schedules.[21]

---

[14] *Id.* at 90-94.
[15] Doc. 39.
[16] Doc. 52.
[17] Docs. 27, 31, 33, 34-36, 40, 42, 43, 44.
[18] Doc. 122 (Intervention Order).
[19] *Id.* at 9-13.
[20] Docs. 113, 114.
[21] *E.g.*, Docs. 100, 105, 129, 138, 143.

## LEGAL STANDARD

This Court must "modify or set aside any part of" a magistrate judge's non-dispositive "order that is contrary to law or clearly erroneous."[22] When a magistrate judge "did not consider [an] issue, de novo review is necessary."[23]

## ARGUMENT

### I.    The SUWA movants are not entitled to intervene as of right.

Under Federal Rule of Civil Procedure 24(a)(2), a proposed intervenor-as-of-right must establish (1) an "interest relating to the property or transaction that is the subject of the action" (2) that may be "impair[ed]" by the action, and (3) that is not "adequately represent[ed]" by "existing parties."[24] "The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate."[25] The "burden" to establish all three elements is on the proposed intervenor.[26]

The SUWA movants are not entitled to intervene as of right for two reasons.

First, the SUWA movants did not meet their burden as to Bears Ears because they failed to show that the Tribal Intervenors' representation was not "adequate[]" under Rule 24(a)(2). "[T]he burden [is] on the petitioner or movant in intervention to show that the representation by parties may be inadequate."[27] Because the SUWA movants are the proposed intervenors, they bear the burden, and they cannot intervene if they "fail[] to present the district court with specific reasons which would explain why intervenors' representation would be superior to [an existing party's] representation."[28] In

---

[22] *Wells v. Kawasaki Motors Corp.*, 2019 WL 7761584, at *1 (D. Utah June 24) (Nuffer, J.); *see also* Fed. R. Civ. P. 72; 28 U.S.C. §636(b)(1)(A).

[23] *Sandoval v. Saul*, 2020 WL 2616240, at *4 n.42 (D. Utah May 22).

[24] *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. PRC*, 787 F.3d 1068, 1071 (10th Cir. 2015).

[25] *San Juan Cty.*, 503 F.3d at 1195.

[26] *Wildearth Guardians v. Nat. Park Serv*, 604 F.3d 1192, 1199 (10th Cir. 2010).

[27] *Nat. Res. Def. Council, Inc. v. NRC*, 578 F.2d 1341, 1345 (10th Cir. 1978).

[28] *Kiamichi R. Co. v. Nat'l Mediation Bd.*, 986 F.2d 1341, 1345 (10th Cir. 1993).

other words, if the proposed intervenors give no specific reasons why the existing parties' representation is inadequate, intervention must be denied. Therefore, when "intervenors have not shown how their objectives differed from [the existing party's], and intervenors have otherwise failed to show that [the existing party] may represent their interests inadequately, [the Tenth Circuit] hold[s] that intervenors cannot intervene as of right."[29]

But here, the Intervention Order implicitly held that the SUWA movants did not need to meet this burden. Indeed, it acknowledged that the SUWA movants had not met the minimum showing— then granted their motion anyway. "[N]one of the proposed intervenors," the Order acknowledged, "have sufficiently addressed whether the Tribes would adequately represent their interests."[30] The Intervention Order then flipped the burden, reasoning that the SUWA movants should win absent any showing on this element, because the *non-movants* had not shown that inadequate representation was inconceivable. The Order reasoned that because "there is no way to say that there is no possibility that [the parties' interests] will not be different," the mere "possibility that the proposed intervenors' interests will diverge from those of the Tribes" satisfied Rule 24.[31] The order identified no particular instance where those interests would diverge.

"Although the [inadequate-representation] burden is minimal, 'it cannot be treated as so minimal as to write the requirement completely out of the rule.'"[32] But the Intervention Order did just that. It thereby committed two compounding legal errors. First, it effectively flipped the burden to the non-movants, holding that the SUWA coalition could intervene despite having "not shown how their objectives differed from [the existing parties']."[33] And second, it made that burden impossible for the

---

[29] *Id.*
[30] Doc. 122 at 11.
[31] *Id.* at 11-12.
[32] *Cajun Elec. Power, v. Gulf States Utilities*, 940 F.2d 117, 120 (5th Cir. 1991) (emphasis added).
[33] *Kiamichi R. Co.*, 986 F.2d at 1345.

non-movants to clear by requiring them to prove that "there is no possibility that [the parties' interests] will not be different."[34] No party could ever prove that a future divergence of interests is inconceivable, and requiring them to do so would make Rule 24 litigation entirely speculative. Though the Intervention Order quoted a Tenth Circuit case in support of this reasoning, the Tenth Circuit's preceding paragraph in the quoted case did identify specific reasons why the existing party would not adequately represent the proposed intervenors: (1) the existing party and the proposed intervenors had different legal defenses available to them, and (2) unlike the proposed intervenors, the existing party had already "been granted its licensed" subject to the challenged action, and therefore might not have needed the prospective relief sought by the proposed intervenors.[35] The Intervention Order made no comparable finding of different defenses or objectives—or any finding at all.

The truth of the matter is that Tribal Intervenors do adequately represent the proposed intervenors' interests. They vow to outflank the United States' defenses and pledge to stand in if the United States ever adopts a "policy shift."[36] They are vigorously litigating this case and have submitted a thorough motion to dismiss.[37] They take the position that they must defend every inch of the reservations to serve "geographical, environmental, and cultural" interests.[38] The SUWA movants have not identified one fault or point of difference with anything the Tribal Intervenors have argued.

The SUWA movants did make one argument that the Tribal Intervenors' representation is inadequate, but the Intervention Order correctly did not indulge that argument. The SUWA movants argued that Tribal Intervenors' representation is inadequate not because they have any actual identifiable deficiency, but simply because they are "political entities" and have interests "that include

---

[34] Doc. 122 at 11-12.
[35] *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345-46 (10th Cir. 1978).
[36] Doc. 29 at 8-9.
[37] Doc. 114.
[38] Doc. 29 at 6.

and stretch beyond environmental concerns."[39] But as a general rule, "political entities" are perfectly capable of representing proposed intervenors' interests.[40] As for the fact that the Tribal Intervenors' interests "include … environmental concerns" in addition to other concerns, that hardly makes the Tribal Intervenors inadequate to represent the SUWA movants' environmental concerns. To the contrary, so long as "the applicant and an existing party share an identical legal objective"—which SUWA movants do not deny—"[the Tenth Circuit] presume[s] that the party's representation is adequate."[41]

Second, the SUWA movants did not meet their burden because they failed to show that the Federal Defendants' representation was not "adequate." "The most common situation in which courts find representation adequate arises when the objective of the applicant for intervention is identical to that of one of the parties."[42] Even when the party is the government, a proposed intervenor is adequately represented when all of its interests "flow from [their] objective of preserving [the government's action]," and the government has the "identical litigation objective" of preserving that action.[43] Courts adopt a "presumption that representation is adequate when the objective of the [proposed intervenor] is identical to that of [the United States]."[44] A proposed intervenor does "not overcome" that presumption even when its "ultimate motivation in th[e] suit may differ" and even

---

[39] Doc. 79 at 5-6.

[40] *E.g.*, *Kane Cty. v. United States*, 606 F. Supp. 3d 1138, 1153-54 (D. Utah 2022); *San Juan Cty.*, 503 F.3d at 1207 (plurality op.); *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) (Friendly, J.); *Oklahoma v. Dep't of the Interior*, 569 F. Supp. 3d 1155, 1161 (W.D. Okla. 2021); *Tri-State Generation & Transmission Ass'n*, 787 F.3d at 1073; *United States v. Georgia*, 19 F.3d 1388, 1394 (11th Cir. 1994); *Parallel Towers III, LLC v. Cty. of Ottawa, Ks.*, 2022 WL 2918229, at *3 (D. Kan. July 25); *Pub. Serv. Co. of N.M. v. Barboan*, 857 F.3d 1101, 1113 (10th Cir. 2017).

[41] *Barboan*, 857 F.3d at 1113-14.

[42] *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986).

[43] *Tri-State Generation*, 787 F.3d at 1073.

[44] *San Juan Cty.*, 503 F.3d at 1204 (plurality op.) (cleaned up).

when the Federal Defendants must balance "additional interests stemming from its unique status as lawyer for the entire federal government."[45]

The Intervention Order reasoned that it was bound to treat the Federal Defendants' representation as inadequate because of one case—*Utah Association of Counties. v. Clinton*, 255 F.3d 1246 (10th Cir. 2001).[46] But in that case, the Tenth Circuit confronted a change of administration from the one that created the challenged reservation, and came to its conclusion based on the Federal Defendants' non-opposition to the proposed intervention-as-of-right. Because "[t]he government has taken no position on the motion to intervene in this case," the court reasoned that existing representation would likely be inadequate.[47] Here, by contrast, there is no change of administration, and the Federal "Defendants oppose intervention as of right under Rule 24(a) because the twenty-four movants [including the SUWA movants] have failed to carry their burden to establish inadequate representation."[48]

The proposed intervenors also cannot show, as has helped proposed intervenors in past cases involving governmental parties, that the government is bound by "conflicting statutory obligations,"[49] or provide a record-based "reason to think that the [government] will not vigorously argue in favor of its statutory authority."[50] So "[a]lthough the two may have diverging views about how to oppose Plaintiffs' claims, any interests SUWA may have are still adequately represented by the United States."[51]

---

[45] *Id.* at 1204-05; *see also Kane Cty.*, 606 F. Supp. 3d at 1153-54; *Oklahoma v. Dep't of the Interior*, 569 F. Supp. 3d at 1161; *Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (Friendly, J.).
[46] *See* Doc. 122 at 11.
[47] *Utah Association of Counties. v. Clinton*, 155 F.3d at 1256; *see Kane Cty., Utah v. United States*, 928 F.3d 877, 895-96 (10th Cir. 2019) ("new administration").
[48] Doc. 57 at 2.
[49] *San Juan Cty.*, 503 F.3d at 1207 (plurality op.).
[50] *Tri-State Generation*, 787 F.3d at 1074.
[51] *Kane Cty.*, 606 F. Supp. 3d at 1153-54.

## II.      Limitations on intervention are warranted.

If the SUWA movants are allowed intervention, their party status should be subject to common-sense limitations. "It is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."[52] This Court has broad discretion to limit intervenors' participation and role in discovery.[53]

Limitations on the proposed intervenors' participation would be especially warranted here. In prior cases, other judges have already found that the SUWA intervenors' involvement makes cases nearly impossible to conduct. For example, one court concluded that "[i]f SUWA were allowed to intervene, without strict limitations … this case would become 'fruitlessly complex or unending,' to the prejudice of the parties."[54] The SUWA movants have in the past "perplexed" and "no doubt perturbed" courts with their approach to intervention,[55] attempted "end runs around the conditions set by the court," "show[n] a disregard for the court's rulings," "bristled over [court-imposed] restrictions and sought to thwart them," "ignored" court orders, "not be[en] candid with the court," and "mischaracterize[ed] information to gain an advantage."[56] The specter of similar litigation conduct here—even though other intervenor-defendants already adequately represent SUWA's interests—represents the antithesis of the "just, speedy, and inexpensive determination of every action and proceeding" promised to plaintiffs in our federal court system. Fed. R. Civ. P. 1.

---

[52] *San Juan Cty.*, 503 F.3d at 1189 (cleaned up); *see also* Fed. R. Civ. P. 24, Advisory Committee Notes, 1966 Amendments ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

[53] *See, e.g., Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1239-40 (10th Cir. 2012); *Cummings v. GMC*, 365 F.3d 944, 952-53 (10th Cir. 2004), *abrogated on other grounds*, *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006); *Davoll v. Webb*, 194 F.3d 1116, 1139 (10th Cir. 1999).

[54] *Sevier Cty. v. United States*, 2013 WL 2643608, at *4 (D. Utah June 12).

[55] *San Juan Cty.*, 503 F.3d at 1169,

[56] *Kane Cty.*, 606 F. Supp. 3d at 1158-65.

If this Court does not overrule the Intervention Order, it should require that the proposed intervenors (1) seek leave of Court before filing any independent motions, subpoenas, or discovery requests, and before calling any witnesses; (2) seek leave of Court before raising any independent claims, cross-claims, counter-claims, or defenses; and (3) direct any objections or questions during depositions or trial testimony through the United States or the Tribes.[57]

## CONCLUSION

This Court should overrule the Intervention Order's grant of the SUWA movants' motion to intervene. If it allows the SUWA movants to intervene, it should impose the common-sense limits on the SUWA movants identified above.

Dated: March 31, 2023

Melissa A. Holyoak (Utah Bar No. 9832)
  Utah Solicitor General
Anthony L. Rampton (Utah Bar No. 2681)
  Assistant Utah Attorney General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov
arampton@agutah.gov

*Counsel for Plaintiff State of Utah*

*/s/ Brady Brammer*
Brady Brammer (SBN: 13411)
Matt Piccolo (SBN: 15707)
BRAMMER RANCK, LLP
1955 W. Grove Parkway, Suite 200
Pleasant Grove, UT 84062
Telephone: (801) 893-3951
bbrammer@brfirm.com

Respectfully submitted,

*/s/ Tyler R. Green*
Tyler R. Green (Utah Bar No. 10660)
  CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

Taylor A.R. Meehan (pro hac vice)
Jeffrey S. Hetzel (pro hac vice)
  CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-9423
taylor@consovoymccarthy.com
jhetzel@consovoymccarthy.com

*Counsel for Plaintiffs Garfield County, Utah; Kane County, Utah; State of Utah*

---

[57] *See Sevier Cty.*, 2013 WL 2643608, at *5 (imposing stricter limitations on intervenors); *In re Managed R.S. 2477 Rd. Cases Litig.*, 2013 WL 12144076 (D. Utah Dec. 17) (same).

James M. Burnham (*pro hac vice*)
Harry S. Graver (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
jburnham@jonesday.com
hgraver@jonesday.com

*Counsel for Individual Plaintiffs*