THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| GARFIELD COUNTY, UTAH, a Utah political subdivision; KANE COUNTY, UTAH, a Utah political subdivision; THE STATE OF UTAH, by and through its Governor, SPENCER J. COX, and its Attorney General, SEAN D. REYES; <br> *Plaintiffs,* <br><br> ZEBEDIAH GEORGE DALTON; BLUERIBBON COALITION; KYLE KIMMERLE; and SUZETTE RANEA MORRIS; <br> *Consolidated Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR. in his official capacity as President of the United States; DEB HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; TOM VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE; RANDY MOORE, in his official capacity as Chief of the Forest Service; FOREST SERVICE; <br> *Defendants,* <br><br> HOPI TRIBE, NAVAJO NATION, PUEBLO OF ZUNI, and UTE MOUNTAIN UTE TRIBE; <br> *Intervenor-Defendants,* <br><br> SOUTHERN UTAH WILDERNESS ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, GRAND CANYON TRUST, GREAT OLD BROADS FOR WILDERNESS, NATIONAL PARKS CONSERVATION ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, THE WILDERNESS SOCIETY, WESTERN WATERSHEDS PROJECT, and WILDEARTH GUARDIANS. <br> *Intervenor-Defendants.* | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS, dkt no. 113, and MOTION TO DISMISS, dkt no. 114** <br><br> Case No. 4:22-cv-00059-DN-PK <br><br> District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

# CONTENTS

CONTENTS ......................................................................................................................... 2
BACKGROUND ................................................................................................................. 2
    Introduction ................................................................................................................... 2
    Procedural History ........................................................................................................ 4
    The Antiquities Act ...................................................................................................... 7
    The Bears Ears and Grand Staircase-Escalante National Monuments .............................. 9
STANDARD OF REVIEW ................................................................................................. 12
DISCUSSION ..................................................................................................................... 12
    Judicial review of these two Proclamations is not permitted without a waiver of sovereign
        immunity ................................................................................................................. 13
        Plaintiffs' claims are statutory challenges, not constitutional challenges ............. 13
        President Biden's actions are not within the *ultra vires* exception to sovereign
            immunity ............................................................................................................ 17
    The Memoranda are not "final agency action" reviewable under the APA ................... 19
        The Memoranda do not meet the three requirements for "final agency action" ... 21
    Individual Plaintiffs do not have standing to bring the claim for denial of permits ......... 26
CONCLUSION .................................................................................................................... 28
ORDER ............................................................................................................................... 28

# BACKGROUND

## Introduction

"The creation of a national monument is of no small consequence."[1] When President

Jimmy Carter withdrew 56 million acres in Alaska to be national monuments in 1978,[2] Alaskans

protested and broke "over 25 Park Service rules in a two-day period."[3] Utahns protested when

President Clinton withdrew the Grand Staircase-Escalante National Monument. The signing

ceremony took place at the South Rim of the Grand Canyon, Arizona "[t]o avoid protests that

would mar a photo opportunity."[4] "[S]olemn and angry," Kanab, Utah residents wore black arm

---

[1] *Mass. Lobstermen's Ass'n v. Raimondo*, 141 S. Ct. 979, 980 (2021) (Roberts, C.J., statement respecting cert denial).

[2] Proclamation Nos. 4611-4627, 3 C.F.R. 69-104 (1978 Comp.).

[3] *Sturgeon v. Frost*, 577 U.S. 424, 430 (2016).

[4] *New Reserve Stirs Animosities in Utah*, N.Y. Times, Oct. 13, 1996.

bands, released 50 black balloons, and bore signs saying, "Shame on you Clinton."[5] Northeast-based commercial fishing associations sued federal officials for "injury from the restrictions on commercial fishing" imposed by the Northeast Canyons and Seamounts Marine National Monument.[6] That monument is "an area roughly the size of Connecticut that sits 130 miles off the coast of Cape Cod."[7] In 2020, the University of Hawaii and the Pacific Islands Fisheries Science Center published their results of the economic impact of Papahānaumokuākea Marine National Monument.[8] President Bush proclaimed the monument, 139,793 square miles, in 2006[9] and President Obama expanded it to 442,781 square miles in 2016,[10] resulting in millions of dollars of lost fishing revenue in the first sixteen months after the expansion.[11]

"The President's unique status under the Constitution distinguishes him from other executive officials,"[12] causing him to have "unreviewable Presidential discretion."[13] Chief Justice Roberts recognized "[t]he broad authority that the Antiquities Act vests in the President stands in marked contrast to other, more restrictive means" used to "preserve portions of land and sea."[14] He also pointed out that the Antiquities Act "has been transformed into a power

---

[5] *1996: Clinton Takes a 1.7 million-acre Stand in Utah*, High Country News, Sep. 30, 1996; *see Strong Emotions Reignited on 20th Anniversary of Utah Monument*, CBS News, Sep. 18, 2016.

[6] *Massachusetts Lobstermen's Ass'n v. Ross*, 349 F. Supp. 3d 48, 53 (D.D.C. 2018), *aff'd as modified*, 945 F.3d 535 (D.C. Cir. 2019).

[7] *Obama Creates Atlantic Ocean's First Marine Monument*, N.Y. Times, Sep. 15, 2016.

[8] Hing Ling Chan, *Economic Impacts of Papahānaumokuākea Marine National Monument Expansion on the Hawaii Longline Fishery*, Marine Policy, Vol. 115 (2020).

[9] Proclamation No. 8031, 71 Fed. Reg. 36441, 36444 (June 2006).

[10] Proclamation No. 9478, 81 Fed. Reg. 60227, 60230 (Aug. 2016).

[11] Chan, *Economic Impacts* at 12.

[12] *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982).

[13] *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948).

[14] *Raimondo*, 141 S. Ct. at 980 (Roberts, C.J., statement respecting cert denial).

without any discernible limit to set aside vast and amorphous expanses of terrain above and below the sea."[15]

"How the President chooses to exercise the discretion Congress has granted him is not a matter for [a court's] review."[16] Instead, according to the 9th Circuit, "[w]hen Congress has wished to restrict the President's Antiquities Act authority, it has done so expressly."[17] Twice, Congress has responded when a president has withdrawn land as a national monument. President Franklin D. Roosevelt proclaimed the Jackson Hole National Monument, 221,610 acres,[18] on March 15, 1943.[19] In 1950, Congress aggressively responded, amending the Antiquities Act itself to prohibit "further extension or establishment of national monuments in Wyoming…except by express authorization of Congress."[20] And later, in response to President Carter's 1978 Alaska proclamations, Congress passed a law that prohibited "future executive branch action which withdraws more than five thousand acres, in the aggregate, of public lands within the State of Alaska."[21] Congress knows how to restrict statutory presidential power. Otherwise, the terms of the statute control.

### Procedural History

This action stems from two cases:

> Consolidated Plaintiffs against President Biden, the Secretary of the Interior, the Director of the Bureau of Land Management, the Secretary of Agriculture, the Chief of the Forest Service, the Department of the Interior, the Bureau of Land

---

[15] *Id.* at 981.

[16] *Dalton v. Specter*, 511 U.S. 462, 476 (1994).

[17] *Murphy Co. v. Biden*, 65 F.4th 1122, 1132 (9th Cir. 2023).

[18] *Id.*

[19] Ronald F. Lee, *The Antiquities Act of 1906: The Proclamation of National Monuments Under the Antiquities Act, 1906-1970*, Article 8, US Department of the Interior, National Park Service (1970).

[20] 54 U.S.C. § 320301(d) ("Limitation on Extension or Establishment of National Monuments in Wyoming").

[21] Act of Dec. 2, 1980, Pub. L. No. 96-487, § 1326(a), 94 Stat. 2371, 2488.

Management, the Department of Agriculture, and the Forest Service ("Federal Defendants");[22] and

Plaintiffs ("Utah Plaintiffs") against Federal Defendants.[23] Federal Defendants filed an unopposed motion to consolidate[24] which was granted.[25]

Intervenor-Defendants Tribal Nations ("Tribal Nations") filed a motion to intervene as defendants,[26] which was granted soon after the cases were consolidated.[27]

Additional organizations requested to be added as defendants,[28] but only the Southern Utah Wilderness Alliance and affiliates[29]("SUWA Intervenors") were permitted to intervene.[30] Other motions to intervene await final decision, pending entry of this order.[31]

Consolidated Plaintiffs[32] and Utah Plaintiffs[33] (collectively "Plaintiffs") filed separate amended complaints. They collectively allege:

---

[22] Civil Docket, case no. 4:22-cv-00060, Complaint filed Aug. 25, 2022.

[23] Civil Docket, case no. 4:22-cv-00059, Complaint filed Aug. 24, 2022.

[24] Unopposed Motion to Consolidate Civil Cases 4:22-cv-59 and 4:22-cv-60, docket no 25, filed Nov. 16, 2022.

[25] Order Granting Motion to Consolidate Cases, docket no. 39, filed Nov. 30, 2022; Order for Consolidation, case no. 4:22-cv-000060, docket no. 63, filed Nov. 30, 2022.

[26] Proposed Intervenors' Second Amended Rule 24 Motion to Intervene, docket no. 29, filed Nov 22, 2022.

[27] Order Granting Movants Hopi Tribe, Navajo Nation, Pueblo of Zuni, and Ute Mountain Ute Tribe's Amended Motion to Intervene, docket no. 52, filed Dec. 8, 2022.

[28] Motion to Intervene and Memorandum in Support, docket no. 27, filed Nov. 22, 2022; Rule 24 Motion of Grand Staircase Escalante Partners, Society of Vertebrate Paleontology, and Conservation Lands Foundations to Intervene as Defendants, docket no. 31, filed Nov. 23, 2022; Motion to Intervene Under Rule 24 and Memorandum of Law in Support of Utah Diné Bikéyah, Friends of Cedar Mesa, The Society of Vertebrate Paleontology Archaeology Southwest, Conservations Lands Foundation, Inc., Patagonia Works, The Access Fund, and The National Trust for Historic Preservation in the United States, docket no. 33, filed Nov. 23, 2022; Motion to Intervene as Defendants and Memorandum in Support, docket no. 34, filed Nov. 23, 2022.

[29] Motion to Intervene and Memorandum in Support 1 n.2 ("Movants are Southern Utah Wilderness Alliance, Center for Biological Diversity, Grand Canyon Trust, Great Old Broads for Wilderness, National Parks Conservation Association, Natural Resources Defense Council, Sierra Club, The Wilderness Society, Western Watersheds Project, and WildEarth Guardians.").

[30] Memorandum Decision and Order on Proposed Intervenors' Motions to Intervene 2, docket no. 122, filed March 17, 2023.

[31] Memorandum Decision and Order Staying Decision on UDB Intervenors' Objection, GSEP Intervenors' Objection, Archaeological Intervenors' Objection and Plaintiffs' Objection 4-5, docket no. 176, filed July 7, 2023.

[32] Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint 90"), docket no. 90, filed Jan. 26, 2023.

(1) President Biden violated the Antiquities Act ("the Act") with the Bears Ears National Monument Proclamation[34] and the Grand Staircase-Escalante National Monument Proclamation[35] (collectively "Proclamations"); and

(2) all Federal Defendant agencies are adversely affecting Plaintiffs through

 (a) the Bears Ears National Monument and Grand Staircase-Escalante National Monument interim memoranda[36] ("the Memoranda") which Plaintiffs allege are "final agency actions,"[37] and

 (b) the denial of permits, which Plaintiffs also allege are "final agency actions."[38]

Plaintiffs seek (1) a declaration that the Act does not authorize President Biden's Proclamations and that they "are therefore unlawful, unenforceable, and void"[39]; (2) "an injunction forbidding Defendants and their successors from implementing, administering, or enforcing" the Proclamations;[40] and (3) a declaration that the alleged final agency actions by Defendants are unlawful.[41]

Federal Defendants,[42] Tribal Nations,[43] (collectively "Defendants") and SUWA Intervenors[44] filed separate motions to dismiss. The National Wildlife Federation filed an *amicus*

---

[33] Amended Complaint of Garfield County, Kane County, and The State of Utah ("Amended Complaint 91"), docket no. 91, filed Jan. 26, 2023.

[34] Amended Complaint 90, ¶¶ 180, 183; Amended Complaint 91, ¶ 373.

[35] Amended Complaint 90, ¶¶ 180, 183; Amended Complaint 91, ¶ 380.

[36] Amended Complaint 90, ¶ 191; Amended Complaint 91, ¶¶ 388, 391, 396, 399.

[37] Amended Complaint 90, ¶ 192; Amended Complaint 91, ¶¶ 386, 394.

[38] Amended Complaint 90, ¶ 193.

[39] Amended Complaint 90 at 66; *see* Amended Complaint 91 at 95.

[40] *Id.*

[41] *Id.*

[42] Defendants' Motion to Dismiss Amended Complaints, docket no. 113, filed March 2, 2023.

[43] Hopi Tribe, Navajo Nation, Pueblo of Zuni, and Ute Mountain Ute Tribe Motion to Dismiss, docket no. 114, filed March 2, 2023.

*curiae* brief in support of these motions.[45] The motions were fully briefed.[46] The Separation of

Powers Clinic filed an *amicus curiae* brief in support of Plaintiffs' arguments.[47]

Consolidated Plaintiffs filed a motion for summary judgment soon after the motions to

dismiss were filed.[48] Defendants motion to stay briefing on the motion for summary judgment

pending disposition of this motion[49] was granted.[50]

For reasons stated below, Federal Defendants' and Tribal Nations' motions to dismiss are

GRANTED and the case is DISMISSED with prejudice.

### The Antiquities Act

Enacted in 1906, the Antiquities Act "was the first U.S. law to provide general legal

protection of cultural and natural resources of historic or scientific interest on Federal lands."[51]

Ten years later, the National Parks System was created "to conserve the scenery, natural and

historic objects, and wildlife in the System units and to provide for the enjoyment of the scenery,

---

[44] SUWA Intervenors' Motion to Dismiss Amended Complaints and Memorandum in Support, docket no. 141, filed March 30, 2023.

[45] Brief of Proposed *Amicus Curiae* National Wildlife Federation, Utah Wildlife Federation, New Mexico Wildlife Federation, Arizona Wildlife Federation, and Colorado Wildlife Federation in Support of Intervenor-Defendants' and Federal Defendants' Motions to Dismiss, docket no 124, filed March 20, 2023.

[46] Individual Plaintiffs' Opposition to Motions to Dismiss, docket no 153, filed April 14, 2023; Garfield County Plaintiffs' Opposition to Motions to Dismiss, docket no 154, filed April 14, 2023; SUWA Intervenors' Reply in Support of Motion to Dismiss, docket no 164, filed May 5, 2023; Hopi Tribe, Navajo Nation, Pueblo of Zuni, and Ute Mountain Utah Tribe Reply in Support of Motion to Dismiss, docket no 165, filed May 5, 2023; Defendants' Reply in Support of Motion to Dismiss Amended Complaints, docket no. 166, filed May 5, 2023.

[47] Brief of Proposed *Amicus Curiae* Separation of Powers Clinic, docket no. 161, filed April 27, 2023.

[48] Individual Plaintiffs' Motion for Summary Judgment, docket no 117, filed March 9, 2023.

[49] Defendants' Motion to Stay Summary Judgment Briefing or, Alternatively, to Extend Deadline for Filing Response to Summary Judgment Motion, docket no. 129, filed March 24, 2023; Hopi Tribe, Navajo Nation, Pueblo of Zuni, and Ute Mountain Ute Tribe Motion to Stay Summary Judgment Briefing or to Extend Deadline for Fling Response to Motion for Summary Judgment, docket no. 138, filed March 27, 2023; SUWA Intervenors' Motion to Stay Summary Judgment Briefing, and to Incorporate SUWA Intervenors' Motion to Dismiss into Existing Briefing Schedule, docket no. 142, filed March 30, 2023.

[50] Memorandum Decision and Order Granting Defendants' Motion to Stay, Intervenor-Defendants Tribal Nations' Motion to Stay and SUWA Intervenor-Defendants' Motion to Stay, docket no. 149, filed April 4, 2023.

[51] *Statement for the Record*, Designation of Monuments Pursuant to the Authorities Provided in the Antiquities Act.

natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."[52]

The process for a President to establish or enlarge a national monument under the Antiquities Act is two-fold. "The President may, in the President's discretion, declare by public proclamation historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated on land owned or controlled by the Federal Government to be national monuments."[53] Then the President "may reserve[s] parcels of land as a part of the national monuments."[54] These parcels "shall be confined to the smallest area compatible with the proper care and management of the objects to be protected."[55]

Since 1920, there have been several challenges to a president's authority to withdraw land as a national monument under the Antiquities Act. These include challenges to the Grand Canyon,[56] Jackson Hole,[57] Devil's Hole,[58] Grand Sequoia,[59] Grand Canyon-Parashant, Canyons of the Ancients, Cascade-Siskiyou, Hanford Reach, Ironwood Forest, Sonoran Desert,[60] Grand Staircase-Escalante,[61] and Northeast Canyons and Seamounts Marine[62] national monuments. Each of these challenges has been unsuccessful.

---

[52] 54 U.S.C.A. § 100101.

[53] 54 U.S.C. § 320301(a).

[54] *Id.* at § 320301(b).

[55] *Id.*

[56] *Cameron v. United States,* 252 U.S. 450 (1920).

[57] *State of Wyoming v. Franke*, 58 F. Supp. 890 (D. Wyo. 1945).

[58] *Cappaert v. United States,* 426 U.S. 128 (1976).

[59] *Tulare Cnty. v. Bush*, 306 F.3d 1138 (D.C. Cir. 2002).

[60] *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1133-34(D.C. Cir. 2002).

[61] *Utah Ass'n of Ctys. v. Bush*, 316 F. Supp. 2d 1172, 1176 (D. Utah 2004) *appeal dismissed Utah Ass'n of Ctys. v. Bush*, 455 F.3d 1094, 1096 (10th Cir. 2006).

[62] *Massachusetts Lobstermen's Ass'n v. Ross*, 945 F.3d 535 (D.C. Cir. 2019) (cert. denied *Massachusetts Lobstermen's Ass'n v. Raimondo*, 209 L. Ed. 2d 486 (2021)).

**The Bears Ears and Grand Staircase-Escalante National Monuments**

The Grand Staircase-Escalante National Monument ("GSENM") was established on September 18, 1996 by President Clinton with Proclamation 6920.[63] It then "consist[ed] of approximately 1.7 million acres."[64] President Trump reduced the monument to 1,003,863 acres on December 4, 2017.[65] President Biden enlarged the monument to 1.87 million acres on October 8, 2021.[66]

The Bears Ears National Monument ("BENM") was established on December 28, 2016, by President Obama with Proclamation 9558.[67] It consisted of "approximately 1.35 million acres."[68] President Trump reduced the monument to 201,876 acres.[69] President Biden enlarged the monument to 1.36 million acres on October 8, 2021.[70]

---

[63] Proclamation No. 6920, 3 C.F.R. 64 (Sep. 18, 1997).

[64] Proclamation No. 6920 at 67.

[65] Proclamation No. 9682, 82 Fed. Reg. 58089, 58093 (Dec. 4, 2017).

[66] Proclamation No. 10286, 86 Fed. Reg. 57335, 57345 (Oct. 8, 2021).

[67] Proclamation No. 9558, 82 Fed. Reg 1139 (Dec. 28, 2016).

[68] Proclamation No. 9558 at 1143.

[69] Proclamation No. 9681, 82 Fed. Reg. 58081, 58085 (Dec. 4, 2017).

[70] Proclamation No. 10285, 86 Fed. Reg 57321, 57331 (Oct. 8, 2021).



Grand Staircase-Escalante National Monument image: Exhibit H, docket no. 113-9, filed March 2, 2023.



Bears Ears National Monument image: Exhibit G, docket no. 113-8, filed March 2, 2023.

## STANDARD OF REVIEW

Defendants bring their Motion to Dismiss under Fed. R. Civ. P. 12.[71] "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[72] Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[73] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[74] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[75] However, "assertions devoid of factual allegations" that are nothing more than "conclusory," and "formulaic recitation" of the law are disregarded.[76]

## DISCUSSION

"Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts."[77]

This rule bars Plaintiffs' claims. Plaintiffs allege President Biden exceeded his authority by enlarging the GSENM and BENM via the Proclamations. Before deciding if the Proclamations are unlawful, the court must decide if they can be reviewed by a court. They cannot. Judicial review requires a waiver of sovereign immunity, which is not present.

---

[71] Defendants' Motion to Dismiss Amended Complaints 1; Tribal Nations' Motion to Dismiss 1.

[72] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[73] Fed. R. Civ. P. 12(b)(6); *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[74] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[75] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[77] *Martin v. Mott*, 25 U.S. 19, 31–32 (1827).

Plaintiffs also allege that the Memoranda written by the Bureau of Land Management ("the BLM") constitute "final agency action" according to the Administrative Procedures Act. They do not. And Plaintiffs do not have standing to allege a denial of a permit because they were not harmed.

### Judicial review of these two Proclamations is not permitted without a waiver of sovereign immunity

Plaintiffs allege that President Biden's Proclamations are reviewable by a federal district court.[78] "The United States, as sovereign, is immune from suit save as it consents to be sued."[79] "The government consents to be sued only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text."[80] Without a statutory waiver by Congress, judicial review of a president's actions is only permitted for constitutional challenges[81] and *ultra vires* challenges.[82] Without either of those bases, "[judicial] review is not available when the statute in question commits the decision to the discretion of the President."[83]

**Plaintiffs' claims are statutory challenges, not constitutional challenges**

Plaintiffs allege that President Biden violated the Act by enlarging the BENM and GSENM with the Proclamations. These are statutory—not constitutional—claims, similar to those in *Dalton v. Specter*.[84] In that case, the President had recently received the authority to close a Philadelphia naval shipyard "pursuant to the Defense Base Closure and Realignment Act

---

[78] Individual Plaintiffs' Opposition to Motions to Dismiss 9-15; Utah Plaintiffs' Opposition to Motions to Dismiss 61.

[79] *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 769, 85 L. Ed. 1058 (1941).

[80] *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996) (internal quotations omitted).

[81] *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992).

[82] *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

[83] *Dalton*, 511 U.S.462, 474 (1994).

[84] *Id.*

of 1990 (1990 Act or Act)."[85] "The decision to close the shipyard was the end result of an elaborate selection process prescribed by the 1990 Act."[86] "[T]he Act provide[d] for three successive rounds of base closings—in 1991, 1993, and 1995."[87] "For each round," the Secretary of Defense ("Secretary") "prepare[d] closure and realignment recommendations," and "submit[ted] his recommendations to Congress and to the Defense Base Closure and Realignment Commission (Commission)."[88] The Commission conducted its own review and issued its recommendations and report.[89] After receiving the Commission's report, the President was required to "decide whether to approve or disapprove" the recommendations.[90] If the President approved the recommendations, "the President must submit the recommendations…to Congress."[91] If Congress did not pass a joint resolution of disapproval, "the Secretary must close all military installations recommended for closure by the Commission."[92] Respondents— "shipyard employees and their unions; Members of Congress from Pennsylvania and New Jersey; the States of Pennsylvania, New Jersey, and Delaware, and officials of those States; and the city of Philadelphia"[93]—"sought to enjoin the [Secretary] from carrying out" the President's decision.[94] Respondents filed their action under the Administrative Procedure Act ("the APA") and the 1990 Act, alleging the Commission's recommendations were faulty.[95] The Supreme

---

[85] *Id*. at 464 (parenthetical in original).

[86] *Id*. at 464.

[87] *Id*. at 464-65.

[88] *Id*. at 465 (parenthetical in original).

[89] *Id*. at 465.

[90] *Id*.

[91] *Id*.

[92] *Id*.

[93] *Id*. at 464 n.1.

[94] *Id*. at 464.

[95] *Id.* at 466.

Court held that the claims were statutory because the President was "said to have violated the terms of the 1990 Act by accepting procedurally flawed recommendations."[96] The claims in this case are also statutory. President Biden is accused of violating the Antiquities Act with his Proclamations that enlarge GSENM and BENM. The claims target the President's actions under the statute. Therefore, they are statutory claims, and judicial review is unavailable.

A "President's actions may…be reviewed for constitutionality."[97] Plaintiffs did not make any constitutional challenges in their amended complaints.[98]

**§702 of the APA does not waive sovereign immunity**

Rather than making constitutional challenges, Plaintiffs argue that § 702 of the APA waives the Federal Government's sovereign immunity.[99] § 702 of the APA states "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

Individual Plaintiffs assert "[s]ection 702 has been read to operate as a 'general waiver' of federal sovereign immunity for all injunctive or declaratory relief."[100] Individual Plaintiffs assert that the Proclamations "necessarily must be implemented by executive branch subordinates" and therefore "claims concerning such proclamations are inherently premised on stopping unlawful subordinate executive action."[101]

Their argument stems from *Brnovich v. Biden*, a District of Arizona case involving vaccination requirements relating to federal contractors and subcontractors ("the Contractor

---

[96] *Id.* at 474.

[97] *Franklin*, 505 U.S. at 801.

[98] *See* Amended Complaint 90 ¶¶ 179-96; Amended Complaint 91 ¶¶ 370-99.

[99] Individual Plaintiffs' Opposition to Motions to Dismiss 12; Utah Plaintiffs' Opposition to Motions to Dismiss 61.

[100] Individual Plaintiffs' Opposition to Motions to Dismiss 12 (citing to *U.S. v. Murdock Mach. & Eng'g Co.*, 81 F.3d 922, 929 n.8 (10th Cir. 1996)).

[101] *Id.*

Mandate.")[102] The district court explained that the mandate "involve[d] a substantial number of officials and entities within the executive apparatus that are unquestionably subject to this Court's equitable jurisdiction." [103] And that court concluded that "Plaintiffs' claims implicat[ing] presidential action" "[did] not preclude judicial review"[104] of the actions of the subordinate officials and entities.

*Brnovich v. Biden* does not apply to this case. Individual Plaintiffs' amended complaint identifies only the President—and not any other Defendant—as the lone official connected to the Proclamations. The complaint's claims include: "President Biden's proclamations"[105]; "President Biden's reservation of land"[106]; "the President lacks the power to declare a reservation that covers the affected area"[107]; "the President's discretion"[108]; "the [Antiquities] Act gives the President the limited power"[109]; "every President's proclamations must comply with the [Antiquities] Act"[110]; and "the President has exceeded his authority."[111] As Individual Plaintiffs' amended complaint points out, there are no intermediary officials involved in the issuance of the Proclamations. Their arguments attempt to sidestep the reality that the President is the one

---

[102] *Brnovich v. Biden*, 562 F. Supp. 3d 123, 132-33 (D. Ariz. 2022) (*reversed on other grounds Mayes v. Biden*, 67 F.4th 921 (9th Cir. 2023).

[103] *Id.* at 150.

[104] *Id.*

[105] Amended Complaint 90 ¶¶ 180-83; Amended Complaint 91 ¶¶ 373, 380.

[106] Amended Complaint 91 ¶¶ 374, 381.

[107] *Id.* at ¶¶ 376, 383.

[108] *Id.*

[109] Amended Complaint 90 ¶ 180.

[110] Amended Complaint 91¶¶ 375, 382.

[111] *Id.* at ¶¶ 371, 378.

"vest[ed]…with authority to administer the [Antiquities] Act and manage the [Proclamations]."[112]

Utah Plaintiffs do not fare any better. They allege "the APA waives sovereign immunity for *all* non-damages actions against the federal government."[113] They reference a Tenth Circuit case, *Simmat v. U.S. Bureau of Prisons*. [114] But this case actually said, "Congress passed legislation in 1976 to waive sovereign immunity in most suits for nonmonetary relief."[115] Utah Plaintiffs fail to acknowledge the *Franklin v. Massachusetts* ruling by the Supreme Court in 1992, which distinguished the APA term "agency" from "the President." The Supreme Court held that "[t]he President is not an agency within the meaning of the [APA]."[116] "As the APA does not expressly allow review of the President's actions," "his actions are not subject to its requirements" nor "reviewable for abuse of discretion under the APA."[117] Therefore, Utah Plaintiffs' argument fails.

**President Biden's actions are not within the *ultra vires* exception to sovereign immunity**

Plaintiffs allege that the Proclamations are *ultra vires* President Biden's authority.[118] An exception to the sovereign immunity doctrine is "suits for specific relief" when an "officer is not doing the business which the sovereign has empowered him to do" and "[h]is actions are *ultra vires* his authority."[119] This exception is narrow, available "only because of the officer's lack of

---

[112] *Wyoming v. United States*, 279 F.3d 1214, 1228 (10th Cir. 2002).

[113] Utah Plaintiffs' Opposition to Motions to Dismiss at 61.

[114] 413 F.3d 1225 (10th Cir. 2005).

[115] *Id.* at 1233.

[116] *Franklin*, 505 U.S. at 796.

[117] *Id.* at 801.

[118] Amended Complaint 91 ¶¶ 371, 378; Individual Plaintiffs' Opposition to Motions to Dismiss 11-12; Utah Plaintiffs' Opposition to Motions to Dismiss 60-62.

[119] *Larson*, 337 U.S. at 689.

delegated power."[120] Merely an "error in the exercise of that power is therefore not sufficient"[121] to satisfy the exception. Invoking *ultra vires* is an "attempt to avoid the shield of sovereign immunity."[122]

Plaintiffs' amended complaint does not assert that President Biden lacks the authority to withdraw federal land as national monuments.

Individual Plaintiffs declare in their opposition that "the President went *beyond the bounds* of his authority to wield a power he does not possess and declare as 'objects' things the Antiquities Act categorically does not reach."[123] And their opposition argues that "this suit rests on the President's *lack* of authority to fashion these monuments."[124] However, Individual Plaintiffs do not cite to any claims from their amended complaint to support these allegations. Even if Individual Plaintiffs were granted leave to amend their complaint, they would not be able to plead the *ultra vires* exception. "No court of appeals has addressed…how to interpret the [Act's] 'smallest area compatible' requirement." At most, Individual Plaintiffs would be able to make the same arguments Utah Plaintiffs make, *infra*. But without additional guidance from Congress or a higher court, the President's actions are not *ultra vires*.

Utah Plaintiffs declare in their opposition that they "allege over and over (in their amended complaint) that the President had no power to make the reservations because they 'exceed [the] limitations] of the Antiquities Act."[125] They cite to paragraphs 288-318 of their amended complaint for support. But those factual statements are allegations that President Biden

---

[120] *Id.* at 690.

[121] *Id.*

[122] *State of N.M. v. Regan*, 745 F.2d 1318, 1320 n.1 (10th Cir. 1984).

[123] Individual Plaintiffs' Opposition to Motions to Dismiss 11-12 (emphasis in briefing).

[124] *Id.* at 12 (emphasis in briefing).

[125] Utah Plaintiffs' Opposition to Motions to Dismiss 61.

misused his authority, not that he lacked it. They claim he exceeded the limitations of the Act[126] by declaring things as monuments "that are not qualifying landmarks, structures, or objects under the Act."[127] They allege his designations are too generic.[128] For example, "items are listed as categories, such as 'broad desert mesas,' rather than as specific objects, such as 'Dance Hall Rock.'"[129] They allege that only nine items[130] "qualif[y] for monument designation under the Act."[131] And while their first two claims for relief are "lack of statutory authority under Antiquities Act," their amended complaint does not contain allegations that President Biden lacked the authority to designate federal land as the BENM and the GSENM.

Plaintiffs cannot rely on the *ultra vires* exception.

### The Memoranda are not "final agency action" reviewable under the APA

On December 16, 2021, the director of the BLM issued Memoranda to the Utah State Director for the BLM.[132] One addressed the BENM Proclamation No. 10,285[133] and the other, the GSENM Proclamation No. 10,286.[134] The subject of each was "Interim Management of the [National Monument]."[135] The Memoranda claim to "(a) provide[] interim guidance for managing the monument while the agency develops a monument management plan; and (b)

---

[126] Amended Complaint 91 at 68.

[127] *Id.* at 61; ¶¶ 293-98, 302-05, 311-313.

[128] *Id.* at ¶¶ 299-301, 306-310.

[129] *Id.* at ¶ 299.

[130] *Id.* at ¶¶ 322-23 ("Bears Ears Buttes, Butler Wash Village, Doll House, Moon House, Newspaper Rock, and San Juan Hill"; "Dance Hall Rock, Twentymile Wash Dinosaur Megatrackway, and Grosvenor Arch").

[131] Amended Complaint 91 ¶ 314.

[132] Memorandum from the BLM Director to the BLM Utah State Director re: Interim Mgmt. of the Bears Ears Nat'l Monument (Dec. 16, 2021) ("BENM Memorandum"); Memorandum from the BLM Director to the BLM Utah State Director re: Interim Mgmt. of the Grand Staircase-Escalante Nat'l Monument (Dec. 16, 2021) ("GSNM Memorandum").

[133] BENM Memorandum.

[134] GSNM Memorandum.

[135] BENM Memorandum 1; GSNM Memorandum 1.

direct[] [the BLM Utah State Director] to begin preparing a monument management plan, with a goal of finalizing that plan no later than March 1, 2024."[136]

Plaintiffs allege that the Memoranda should be reviewed because they are considered "final agency action" under § 706(2) of the APA.[137]

As stated *supra*, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[138] "[T]he person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion."[139] "Agency action" "ha[s] the meaning[] given [it] by [5 U.S.C. §551]."[140] "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[141] "[A]ction…is meant to cover comprehensively every manner in which an agency may exercise its power."[142]

Agency action must be by statute or final agency action.[143] "[F]inal agency action for which there is no other adequate remedy in a court are subject to judicial review."[144] "Final agency action" is not defined in the US Code.

---

[136] *Id.*

[137] Amended Complaint 90 ¶¶ 190-96; Amended Complaint 91 ¶¶ 385-99.

[138] 5 U.S.C. § 702.

[139] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).

[140] 5 U.S.C. §701(b)(2).

[141] *Id.* at § 551(13).

[142] *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 478 (2001).

[143] 5 U.S.C. § 704.

[144] *Id.*

**The Memoranda do not meet the three requirements for "final agency action"**

To determine if agency action is final depends on (1) whether its impact on a plaintiff is "direct and immediate"[145]; (2) whether the action "mark[s] the consummation of the agency's decisionmaking (sic) process"[146]; and (3) whether the action is "one by which rights or obligations have been determined, or from which legal consequences will flow."[147] The Memoranda—almost identical to one another in text—(1) do not have a direct and immediate impact on Plaintiffs; (2) are not the end of the BLM's decision making process; and (3) do not establish rights, obligations, nor legal consequences.

> (1)    *The Memoranda do not have a direct and immediate impact on Plaintiffs*

In order to have a direct and immediate impact on a plaintiff, an agency action must "purport to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of all [plaintiffs]."[148] An example is given in *Abbott Laboratories v. Gardner*. The Commissioner of Food and Drugs published a regulation[149] that, "effective immediately upon publication,"[150] required "labels, advertisements, and other printed matter relating to prescription drugs to designate the established name of the particular drug involved

---

[145] *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967) (*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

[146] *Bennett v. Spear,* 520 U.S. 154, 178 (1997) (internal quotations omitted).

[147] *Id.*

[148] *Abbott Lab'ys*, 387 U.S. at 152.

[149] *Id.* at 138 ("'If the label or labeling of a prescription drug bears a proprietary name or designation for the drug or any ingredient thereof, the established name, if such there be, corresponding to such proprietary name or designation, shall accompany each appearance of such proprietary name or designation.' 21 CFR s 1.104(g)(1).").

[150] *Id.* at 152.

every time its trade name [was] used anywhere in such material."[151] This necessitated "destroy[ing] stocks of printed matter" and "invest[ing] heavily in new printing type and new supplies."[152] If plaintiffs—"a group of 37 individual drug manufacturers and…the Pharmaceutical Manufacturers Association"[153]—chose not to comply, they "would risk serious criminal and civil penalties for the unlawful distribution of 'misbranded' drugs."[154] That consequence was direct and immediate impact.

The Memoranda do not have a direct and immediate impact on Plaintiffs. Plaintiffs assert that the Memoranda "restrain [their] use of the land, cut off potential revenue, and impede other projects."[155] And that "[they] have been subjected to new rules, regulations, restrictions, and standards imposed and caused by both interim management plans."[156] However, the contents of the Memoranda do not support these allegations.

The Memoranda are directed to the BLM's Utah State Director[157] ("BLM-UT"), and the BLM-UT is the only person given directives in the Memoranda.[158] The Memoranda only mention State and local governments and citizens for consultation purposes. The Memoranda "direct[] the Secretary of the Interior and the Secretary of Agriculture" to "coordinat[e] with State and local governments" "in the development of the monument management plan."[159] They advise that "[t]he planning process should…provide for maximum public involvement, including

---

[151] *Id.* at 139.

[152] *Id.* at 152.

[153] *Id.* at 138.

[154] *Id.* at 153.

[155] Amended Complaint 91 ¶¶ 388, 396.

[156] Amended Complaint 90 ¶ 192.

[157] BENM Memorandum 1; GSENM Memorandum 1.

[158] BENM Memorandum 2-8; GSENM Memorandum 2-7.

[159] BENM Memorandum 6; GSENM Memorandum 6.

consultation with State and local governments, community members, and other interested stakeholders."[160] And the Proclamations require the monument advisory committees "to include representatives from 'State and local governments, Tribal Nations, recreational users, conservation organizations, educators, local business owners, private landowners, and the scientific community."[161] No action of any Plaintiff is compelled by the Memoranda. There are no immediate deadlines for Plaintiffs in the Memoranda; only the deadlines for a BLM planning process: "within one year"[162]; 6 months[163]; within 45 days[164]; and "expeditiously (by January 31, 2022)."[165] Nothing in the Memoranda's language directly or immediately impacts Plaintiffs.

>
> (2)    *The Memoranda are not a consummation of the BLM's decision making process*

Plaintiffs' claim that the Memoranda are the "consummation of BLM's decisionmaking (sic) process."[166] Plaintiffs do not cite to any text in the Memoranda for support.[167] A "decision [that is] effectively the last word of the agency" constitutes "final agency action."[168] "[I]t must not be of a merely tentative or interlocutory nature."[169] In *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, the Supreme Court held that a pre-permit, "approved jurisdictional decision"

---

[160] BENM Memorandum 8; GSENM Memorandum 7.

[161] GSENM Memorandum 6; *see* BENM Memorandum 7.

[162] BENM Memorandum 7; GSENM Memorandum 6.

[163] BENM Memorandum 7; GSENM Memorandum 6.

[164] BENM Memorandum 8; GSENM Memorandum 7.

[165] BENM Memorandum 4; GSENM Memorandum 4.

[166] Individual Plaintiffs' Opposition to Motions to Dismiss 64; Utah Plaintiffs' Opposition to Motions to Dismiss 63-64.

[167] Individual Plaintiffs' Opposition to Motions to Dismiss 64; Utah Plaintiffs' Opposition to Motions to Dismiss 64.

[168] *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1192 (10th Cir. 2014).

[169] *Bennett*, 520 U.S. at 178 (internal citation omitted).

constituted "final agency action" because it was "issued after extensive factfinding by the Corps" and was "typically not revisited if the permitting process move[d] forward."[170]

Conversely, these Memoranda are only preliminary, internally directive, informative, and suggestive. The phrase "interim guidance" is mentioned at the very beginning and throughout.[171] The Memoranda "provide[] specific direction to ensure that, until the new [joint management] plan is prepared, the BLM will manage the [National Monuments] in a manner consistent with [the Proclamations].[172] The Memoranda do not give new information. They simply inform BLM-UT how they should comply with the Proclamations until the 2024 management plan is created.

The Memoranda reference the actions directed in the Proclamations and the monument management plans (forthcoming before March 1, 2024[173]) as the source of any direction.[174] The Memoranda themselves do not give any requirements. They are simply a connector between the Proclamations and future monument management plans.

The Memoranda also reference other documents as controlling (the BLM Manual,[175] CFRs,[176] and the Omnibus Act[177]). But, again, the Memoranda do not give any order or compel any action.

The Memoranda contain language that suggests more guidance could come:

> More specific guidance regarding particular types of uses and activities follows. Note, however, that this guidance is not intended to be comprehensive; additional,

---

[170] 578 U.S. 590, 597–98 (2016).

[171] GSENM Memorandum 1, 2, 6; BENM Memorandum 1, 2, 6.

[172] BENM Memorandum 2; GSENM Memorandum 1-2.

[173] BENM Memorandum 1; GSENM Memorandum 1.

[174] BENM Memorandum 1-7; GSENM Memorandum 1-7.

[175] BENM Memorandum 2, 5, 7; GSENM Memorandum 2, 5, 6.

[176] BENM Memorandum 2-3; GSENM Memorandum 2.

[177] BENM Memorandum 2; GSENM Memorandum 3.

detailed direction may be provided as particular issues are identified, including through the decision making and public involvement processes.[178]

Nothing in the Memoranda suggest that they are anything more than informative dicta and internal agency direction.

> ### (3)    The Memoranda do not "generate legal consequences"

Plaintiffs allege that the Memoranda "generate legal consequences"[179] and "determine rights or obligations."[180] Final agency action must have "direct and appreciable legal consequences."[181] Agency action that binds multiple agencies and prohibits them from bringing a lawsuit against a property owner for five years has legal consequences.[182] Or a document may be agency action if it "warns…of incurring criminal penalties;" "issue[s] a cease and desist order" that is "enforceable by the courts;" or "revo[kes] [a] certificate or permit."[183] Agency action that "carries no direct consequences" and "serves more like a tentative recommendation than a final and binding determination" is not final.[184] The Memoranda are "purely advisory."[185]

Plaintiffs allege legal consequences based on the statement in the Memoranda: "no new mining claims may be located, and no new mineral leases may be issued."[186] This is incorrect. The Memoranda only quote the Proclamations, and then summarize them: "Therefore, no new mining claims may be located, and no new mineral leases may be issued, on lands within the

---

[178] BENM Memorandum 5; GSENM Memorandum 5.

[179] Individual Plaintiffs' Opposition to Motions to Dismiss 65.

[180] Utah Plaintiffs' Opposition to Motions to Dismiss 65.

[181] *Bennett*, 520 U.S. at 178.

[182] *U.S. Army Corps of Engineers*, 578 U.S. 590, 598-99 (2016).

[183] *Frozen Food Exp. v. United States*, 351 U.S. 40, 44 (1956).

[184] *Franklin*, 505 U.S. at 798.

[185] *Bennett*, 520 U.S. at 178.

[186] Amended Complaint 91 ¶¶ 387, 395; Individual Plaintiffs' Opposition to Motions to Dismiss  65.

monument."[187] The Memoranda do not add new restrictions, as Plaintiffs allege. The Memoranda do not warn of civil penalties or trigger criminal punishments, nor do they impose fines. They frequently cite to or quote the Proclamations. They do not create anything new that was not already created by the Proclamations. The Memoranda do not impose legal consequences, nor do they declare rights or obligations.

The Biden Proclamations are the source of BLM's obligations, and the Memoranda merely summarize the effects. They are not "final agency action" and therefore are not reviewable under the APA.

**Individual Plaintiffs do not have standing to bring the claim for denial of permits**

Individual Plaintiffs allege "[they] have been harmed when they have had federal permits denied as a result of President Biden's proclamations and their implementing regulations."[188] Individual Plaintiffs claim that "[a] permit denial is "final agency action."[189] "Plaintiffs have the burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of section 551(13)."[190] The first requirement of 5 U.S.C. § 702 is "the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion."[191] "The burden is on the party seeking review under § 702 to set forth specific facts…showing that he has satisfied its terms."[192]

---

[187] BENM Memorandum 2; GSENM Memorandum 2.

[188] Amended Complaint 90 at 193.

[189] *Id.*

[190] *Colorado Farm Bureau Fed'n v. U.S. Forest Service*, 220 F.3d 1171, 1173 (10th Cir. 2000).

[191] *Lujan*, 497 U.S. at 882.

[192] *Id.* at 884.

Individual Plaintiffs do not specify in their "claims for relief" what specific permit was denied; which agency denied it; or specifically when it was denied.[193] Individual Plaintiffs did state in the body of the Amended Complaint that BLM Defendant "denied the [Utah/Arizona ATV] Club's request" "for a special recreation permit to host part of its Jamboree on Inchworm Arch Road."[194] Individual Plaintiffs allege that the Utah/Arizona ATV Club ("the Club") was granted a permit for this event in 2020 and 2021 by BLM.[195] And in 2022, "[t]he only intervening change was that President Biden had issued his proclamations, and BLM had issued its interim management plan[196] implementing them."[197]

Even if the specific statement in the body of the amended complaint is sufficient, the Club does not have standing to bring this claim. The Club is "an outdoor off-highway vehicle recreation club" that "boasts a number of members from Utah" and is a member of BlueRibbon Coalition.[198]

The Club is not a party to this lawsuit. The Club is only a member of the BlueRibbon Coalition. BlueRibbon "is a 501(c)(3) non-profit that has worked to protect access to public lands…since 1987."[199] It "is a membership-based organization, with thousands of members across every State in the country."[200] "In Utah, BlueRibbon has…almost 30 members who are business or organizations."[201]

---

[193] Amended Complaint 90 at 193.

[194] *Id*. at ¶ 108.

[195] *Id*. at ¶¶ 106-07.

[196] Apparently a reference to the Memoranda.

[197] *Id*. at ¶ 108.

[198] *Id*. at ¶ 104.

[199] *Id*. at ¶ 80.

[200] *Id*.

[201] *Id*. at ¶ 81.

[An] "entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of the respondent's members.[202]

The Club is not joined as a party to this action, so Individual Plaintiffs cannot seek for relief for a permit denied to the Club.

## CONCLUSION

In spite of the sincere and deeply held view of the Plaintiffs, there is no relief for them in this action.

It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review.[203]

President Biden's judgment in drafting and issuing the Proclamations as he sees fit is not an action reviewable by a district court.

## ORDER

Federal Defendants' and Tribal Nations' motions to dismiss are hereby GRANTED with prejudice. The clerk is directed to close the case.

Signed August 11, 2023.

BY THE COURT

David Nuffer
United States District Judge

---

[202] *Lujan*, 497 U.S. at 893.

[203] *United States v. George S. Bush & Co.*, 310 U.S. 371, 380 (1940).